1  EILEEN M. DECKER
   United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   J. MARK CHILDS (Cal. Bar No. 162684)
4  Assistant United States Attorney
   OCDETF Section
5       1400 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-2433
7       Facsimile: (213) 894-0142
        E-mail: Mark.Childs@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10              UNITED STATES DISTRICT COURT

11           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 ROBERT LEWIS BANDY,            No. CR 02-357-RSWL
                                      CV 16-4138-RSWL
13          Petitioner,
                                   GOVERNMENT'S OPPOSITION TO
14             v.                  PETITIONER'S MOTION FOR RELIEF
                                   PURSUANT TO 28 U.S.C. § 2255
15 UNITED STATES OF AMERICA,

16          Respondent.

17

18      Respondent-Plaintiff United States of America, by and through

19 its counsel of record, the United States Attorney for the Central

20 District of California and Assistant United States Attorney J. Mark

21 Childs, hereby moves to dismiss the motion of petitioner-defendant

22 Robert Lewis Bandy ("petitioner") to vacate, set aside, or correct

23 his sentence pursuant to 28 U.S.C. § 2255.  In the alternative, the

24 government requests that the Court deny petitioner's claims in his

25 § 2255 motion.

26

27

28

                                 1

The government's opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

For the reasons set forth in the attached memorandum, the government believes that this matter may be resolved without a hearing.


Dated: September 20, 2016                    Respectfully submitted,

                                             EILEEN M. DECKER
                                             United States Attorney

                                             LAWRENCE S. MIDDLETON
                                             Assistant United States Attorney
                                             Chief, Criminal Division


                                             _____/s/_____
                                             J. MARK CHILDS
                                             Assistant United States Attorney

                                             Attorneys for Plaintiff
                                             UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                <u>PAGE</u>

**Contents**

I.    INTRODUCTION...................................................1

II.   STATEMENT OF FACTS.............................................2

      A.   Petitioner's Conviction and Sentence.....................2

      B.   Petitioner's Appeal......................................4

      C.   Johnson II, Welch, and Dimaya............................4

      D.   Petitioner's 2255 Motion.................................5

III.  ARGUMENT......................................................6

      A.   Petitioner's Claims are Procedurally Barred Because He
           Waived Collateral Review, Procedurally Defaulted, and
           Brought Them Too Late....................................6

           1.   Petitioner's Collateral Attack Waiver Should Be
                Enforced............................................6

           2.   Petitioner's claim is procedurally defaulted........9

           3.   Court's Failure to Read the Collateral Review
                Waiver to Petitioner Does Not Bar Dismissal of
                § 2255 Motion......................................11

           4.   Petitioner's § 2255 Motion Is Time-Barred..........14

           5.   *Johnson* does not apply to § 924(c)...............15

                a.   Significant differences make § 924(c)(3)
                     narrower and easier to construe than the
                     ACCA..........................................16

                b.   Dimaya does not require an extension of
                     Johnson to § 924(c)...........................17

           6.   *Johnson* similarly does not apply retroactively to
                Sentencing Guidelines challenges on collateral
                review.............................................18

                a.   Procedural versus substantive rules...........19

                b.   In the Sentencing Guidelines context,
                     Johnson is a procedural rule subject to
                     Teague's non-retroactivity directive..........21

                c.   Recent decisions from the Courts of Appeals....24

i

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                                        <u>PAGE</u>

    B.    Petitioner's Claims Fail on the Merits..................25

        1.    Petitioner's is a career offender because his prior conviction for robbery constitute crimes of violence........................................25

             a.    Penal Code Section 211 is an enumerated crime of violence and remains a crime of violence....................................25

                 (A)    Under *Nieves-Medrano*, California Penal Code section 211 Satisfies the "Elements" Clause of § 4B1.2..............31

        2.    Petitioner's motion also must be denied because armed bank robbery remains a crime of violence......34

             *a.*    Armed Bank Robbery Constitutes a Crime of Violence Under the Elements Clause............34

             b.    The Lesser-Included Offense of Bank Robbery by Force or Intimidation Is a Crime of Violence....................................35

             c.    Armed Bank Robbery Constitutes a Crime of Violence Because the Use of a Deadly or Dangerous Weapon Necessarily Involves the Threatened Use of Force.......................43

             d.    Court of Appeals Have Reaffirmed that Armed Bank Robbery Constitutes a Crime of Violence Notwithstanding Johnson II....................45

             e.    Defendant's Conviction for Armed Bank Robbery Also Constitutes a Crime of Violence as an Enumerated Offense......................47

             f.    Petitioner's Position Defeats the Purpose of the § 924(c) Statute in Regards to Armed Bank Robbery..................................49

IV.    CONCLUSION................................................51

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                 PAGE

**Cases**

Anders v. California,
  386 U.S. 738 (1967) ................................. 4

Apprendi v. New Jersey,
  530 U.S. 466 (2000) ................................. 20

Bailey v. United States,
  516 U.S. 137 (1995) ................................. 50

Beard v. Banks,
  542 U.S. 406 (2004) ................................. 24

Beckles v. U.S., S. Ct. No. 15-8544,
  2016 WL 1029080 (June 27, 2016) ..................... 5

Bolanos v. Holder,
  734 F.3d 875 (9th Cir. 2013) ....................... 46

Bousley v. United States,
  523 U.S. 614 (1998) ......................... 10, 11, 21

Carter v. United States,
  530 U.S. 255 (2000) ................................. 39

Clay v. United States,
  537 U.S. 522 (2003) ............................ 14, 15

Corley v. United States,
  556 U.S. 303 (2009) ................................. 51

Crawford v. Washington,
  541 U.S. 36 (2004) ................................. 20

Dawkins v. United States,
  809 F.3d 953 (7th Cir. 2016) ....................... 27

Dimaya v. Lynch,
  803 F.3d 1110 (9th Cir. 2015) ............... 5, 17, 18

Donnell v. United States,
  2016 WL 338383 (8th Cir. June 20, 2016)...........5, 25

## TABLE OF AUTHORITIES

DESCRIPTION                                                        PAGE

Edwards v. Carpenter,
  529 U.S. 446 (2000) .................................. 10

Elonis v. United States,
  135 S. Ct. 2001 (2015) ............................. 39

Fernandez-Ruiz v. Gonzales,
  466 F.3d 1121 (9th Cir. 2006) ................. 37, 38, 39

Gall v. United States,
  552 U.S. 38 (2007) ................................. 24

Gideon v. Wainwright,
  372 U.S. 335 (1963) ............................. 20, 21

Gilbert v. United States,
  640 F.3d 1293 (11th Cir. 2011) ..................... 10

Gonzales v. Duenas-Alvarez,
  549 U.S. 183 (2007) ............................. 41, 42

Hicks v. United States,
  155 Fed. Appx. 274 (9th Cir. 2005) .................. 7

In re Arnick,
  2016 WL 3383487 (5th Cir. June 17, 2016) ............ 5

In re Griffin,
  2016 WL 3002293 (11th Cir. May 25, 2016) ............ 5

In re Hubbard,
  2016 WL 3181417 (4th Cir. June 8, 2016) ............. 5

In re Patrick,
  No. 16-5353, 2016 WL 4254929 (6th Cir. Aug. 12, 2016) . 5

In re Rivero,
  797 F.3d 986 (11th Cir. 2015) ...................... 25

James v. United States,
  550 U.S. 192 (2007) ............................... 21

Johnson v. United States,
  135 S. Ct. 2551 (2015) .......................... passim

**TABLE OF AUTHORITIES**

DESCRIPTION                                                    PAGE

Johnson v. United States,
    559 U.S. 133 (2010) ................................. 40

King v. Burwell,
    135 S. Ct. 2480 (2015) ............................. 50

Malabed v. N. Slope Borough,
    335 F.3d 864 (9th Cir. 2003) (en banc) ............. 37

McQuiggin v. Perkins,
    133 S. Ct. 1924 (2013) ............................. 10

Miller v. Gammie,
    335 F.3d 889 (9th Cir. 2003) ................... 34, 47

Mistretta v. United States,
    488 U.S. 361 (1989) ................................ 23

Molina-Martinez v. United States,
    136 S. Ct. 1338 (2016) ............................. 24

Nieves-Medrano v. Holder,
    590 F.3d 1057 (9th Cir. 2010) ...................... 32

O'Dell v. Netherland,
    521 U.S. 151 (1997) ................................ 24

Peugh v. United States,
    133 S. Ct. 2072 (2013) ............................. 24

Reed v. Ross,
    468 U.S. 1 (1984) .................................. 10

Roper v. Simmons,
    543 U.S. 551 (2005) ................... 20, 37, 39, 40

Schriro v. Summerlin,
    542 U.S. 348 (2004) ............................ 20, 21

Serrano v. Holder,
    440 F. App'x 586 (9th Cir. 2011) .................. 33

Shuti v. Lynch,
    No. 15-3835, 2016 WL 3632539 (6th Cir. July 7, 2016) . 18

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

Simpson v. United States,
   435 U.S. 6 (1978) ................................ 45, 50

Stewart v. Lagrand,
   526 U.S. 115 (1999) .................................. 11

Stinson v. United States,
   508 U.S. 36 (1993) ......................... 26, 27, 29

Stringer v. Black,
   503 U.S. 222 (1992) .................................. 19

Sykes v. United States,
   131 S. Ct. 2267 (2011) .............................. 21

Taylor v. United States,
   495 U.S. 575 (1990) .................................. 42

Teague v. Lane,
   489 U.S. 288 (1989) ........................ 19, 20, 21

Tyler v. Cain,
   533 U.S. 656 (2001) .................................. 21

United States v. Adkins,
   937 F.2d 947, 950 n.2 (4th Cir. 1991)) ............... 47

United States v. Allen,
   157 F.3d 661 (9th Cir. 1998) ......................... 2

United States v. Alsop,
   479 F.2d 65 (9th Cir. 1973) ......................... 38

United States v. Arellano-Gallegos,
   387 F.3d 794 (9th Cir. 2004) .................... 13, 14

United States v. Armijo,
   651 F.3d 1226 (10th Cir. 2011) ...................... 28

United States v. Becerril-Lopez,
   541 F.3d 881 (9th Cir. 2008) ........................ 48

United States v. Becerril-Lopez,
   541 F.3d 881 (9th Cir. 2008) .................... 29, 30

## TABLE OF AUTHORITIES

DESCRIPTION                                                          PAGE

United States v. Beierle,
  77 F.3d 1199 (9th Cir. 1996) ........................ 45

United States v. Bibler,
  495 F.3d 621 (9th Cir. 2007) ......................... 9

United States v. Blocker,
  802 F.2d 1102 (9th Cir. 1986) ....................... 50

United States v. Bolinger,
  940 F.2d 478 (9th Cir. 1991) ........................ 12

United States v. Braswell,
  501 F.3d 1147 (9th Cir. 2007) ....................... 11

United States v. Burgos-Ortega,
  777 F.3d 1047 (9th Cir.) ............................ 42

United States v. Castleman,
  134 S. Ct. 1405 (2014) .......................... 43, 51

United States v. Coleman,
  208 F.3d 786 (9th Cir. 2000) ..................... 36-37

United States v. David H.,
  29 F.3d 489 (9th Cir. 1994) ......................... 33

United States v. De La Fuente,
  353 F.3d 766 (9th Cir. 2003) ........................ 43

United States v. DeSantiago-Martinez,
  980 F.2d 582 (9th Cir. 1992) ................. 12, 13, 14

United States v. Dixon,
  805 F.3d 1193 (9th Cir. 2015) ................... 32, 34

United States v. Eichman,
  496 U.S. 310 (1990) ................................. 20

United States v. Estrada,
  No. CV-07-367-S-BLW, 2008 WL 5069083
  (D. Idaho July 3, 2008) ............................. 11

United States v. Frady,
  456 U.S. 152 (1982) ................................. 10

**TABLE OF AUTHORITIES**

DESCRIPTION                                                      PAGE

United States v. Hall,
    714 F.3d 1270 (11th Cir. 2013) ................... 28, 29

United States v. Harris,
    572 F.3d 1065 (9th Cir. 2009) ....................... 30

United States v. Hayes,
    555 U.S. 415 (2009) ................................. 51

United States v. Hill,
    No. 14-3872, 2016 WL 4120667
    (2d Cir. Aug. 3, 2016) ..................... 16, 17, 18

United States v. Hopkins,
    703 F.2d 1102 (9th Cir. 1983) ................... 36, 47

United States v. Howard,
    No. 15-10042, 2016 WL 3470070
    (9th Cir. June 24, 2016) ........................... 46

United States v. Inoshita,
    No. 15-00159, 2016 WL 2977237
    (D. Haw. May 20, 2016) .............................. 8

United States v. Jeffries,
    2016 WL 2848498 (5th Cir. May 13, 2016) .......... 27-28

United States v. Jones,
    932 F.2d 624 (7th Cir. 1991) ....................... 47

United States v. Leshen,
    453 F. App'x 408 (4th Cir. 2011) ................... 29

United States v. Lockley,
    632 F.3d 1238 (11th Cir. 2011) ..................... 28

United States v. Ma,
    290 F.3d 1002 (9th Cir. 2002).......................13

United States v. Manzo-Solano,
    2016 WL 1554120 (9th Cir. Apr. 18, 2016) ........... 30

United States v. Marrero,
    743 F.3d 389 (3d Cir. 2014) ..................... 28, 29

viii

## TABLE OF AUTHORITIES

DESCRIPTION                                                          PAGE

United States v. Mazariego-Gomez,
  2016 WL 1554135 (9th Cir. Apr. 18, 2016) ............. 30

United States v. McBride,
  No. 15-3759, 2016 WL 3209496 (6th Cir. June 10, 2016)  47

United States v. McNeal,
  818 F.3d 141 (4th Cir. 2016) .................... passim

United States v. Medina-Carrasco,
  815 F.3d 457 (9th Cir. 2015) .................... 7, 8

United States v. Melchor-Meceno,
  620 F.3d 1180 (9th Cir. 2010) ............... 39, 43, 46

United States v. Michlin,
  34 F.3d 896 (9th Cir. 1994) ...................... 13

United States v. Navarro-Botello,
  912 F.2d 318 (9th Cir. 1990) .................... 7, 14

United States v. Odom,
  329 F.3d 1032 (9th Cir. 2003) ............... 44-45, 45

United States v. Prickett,
  No. 15-3486, 2016 WL 4010515
  (8th Cir. July 27, 2016) ......................... 16

United States v. Pruitt,
  32 F.3d 431 (9th Cir. 1994) ...................... 12

United States v. Reves,
  774 F.3d 562, 566 (9th Cir. 2014) ............... 7, 8

United States v. Rodriguez-Guzman,
  506 F.3d 738 (9th Cir. 2007) ..................... 27

United States v. Santiesteban-Hernandez,
  469 F.3d 376 (5th Cir. 2006) ..................... 42

United States v. Selfa,
  918 F.2d 749 (9th Cir. 1990) ........... 36, 38, 41, 47

United States v. Shell,
  789 F.3d 335 (4th Cir. 2015) ..................... 29

**TABLE OF AUTHORITIES**

DESCRIPTION                                                      PAGE

United States v. Shuck,
    481 F. App'x 600 (11th Cir. 2012) ..................... 49

United States v. Siu Kuen Ma,
    290 F.3d 1002 (9th Cir. 2002) ........................ 13

United States v. Snead,
    2016 WL 4091548 (N.D. Cal. Aug. 2, 2016) ............ 31

United States v. Soto-Rivera,
    811 F.3d 53 (1st Cir. 2016) ......................... 28

United States v. Steppes,
    2016 WL 3212168 (9th Cir. June 10, 2016) ........ 46, 47

United States v. Tate,
    No. 15-10283, 2016 WL 4191909 (9th Cir. Aug. 9, 2016)  31

United States v. Taylor,
    814 F.3d 340 (6th Cir. 2016) ................ 16, 17, 18

United States v. Torres-Miguel,
    701 F.3d 165 (4th Cir. 2012) ........................ 43

United States v. Velasquez-Bosque,
    601 F.3d 955 (9th Cir. 2010) ..................... 30-31

United States v. Vences,
    169 F.3d 611 (9th Cir. 1999) ......................... 9

United States v. Villavicencio-Burruel,
    608 F.3d 556 (9th Cir. 2010) ........................ 43

United States v. Vonn,
    224 F.3d 1152 (9th Cir. 2000) ....................... 13

United States v. Walker,
    595 F.3d 441 (2d Cir. 2010) ......................... 28

United States v. Waters,
    No. 15-2728, 2016 WL 3003352 (7th Cir. May 24, 2016) . 44

United States v. Wright,
    215 F.3d 1020 (9th Cir. 2000) ....................... 45

**TABLE OF AUTHORITIES**

DESCRIPTION                                                        PAGE

United States v. Wright,
    957 F.2d 520 (8th Cir. 1992) ......................... 47

Voisine v. United States
    No. 14-10154, 2016 WL 3461559 (June 27, 2016) ..38, 39, 51

Welch v. United States,
    136 S. Ct. 1257 (2016) ................... 4, 5, 23, 24

Whorton v. Bockting,
    549 U.S. 406 (2007) ................................. 21

**Federal Statutes**

8 U.S.C. § 1101 ................................. 33

18 U.S.C. § 16 ............................... passim

18 U.S.C. § 211 ............................... 5, 33

18 U.S.C. § 494 ................................. 33

18 U.S.C. § 924 ............................... passim

18 U.S.C. § 2113 .............................. passim

18 U.S.C. § 2255 .............................. passim

18 U.S.C. § 5032 ................................ 33

18 U.S.C. § 16 .............................. 33, 34

28 U.S.C. § 4 ................................. 1, 2

28 U.S.C. § 211 .................................. 1

28 U.S.C. § 924 ..................... 15, 16, 17, 26

28 U.S.C. § 2255 ............................passim

**State Statutes**

Cal. Penal Code § 211 ............... 26, 31, 32, 33

Cal. Penal Code § 215 ......................... 33

Cal. Penal Code § 924 ......................... 44

Cal. Penal Code § 2113 ................... passim

Cal. Penal Code § 2113 ......................... 50

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

**Rules**

U.S.S.G § 2K2.1  ..................................... 31

U.S.S.G § 2L1.2  ............................. 30, 31, 33

U.S.S.G § 4B1.1  .................................. passim

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

On December 6, 2002, petitioner Robert Lewis Bandy ("petitioner"), a serial armed bank robber, robbed two financial institutions.  During the first bank robbery, petitioner pointed a gun at a teller and told her, "bitch get up and get your money." Later that day, at another bank, with a shotgun in hand, petitioner told a teller, "I'll shoot you if I don't get the 100s."  After the second bank robbery, petitioner participated in a high-speed get-away from the police during which the get-away vehicle reached speeds of 100 mph, ran red lights, and collided with another vehicle.  During the chase, petitioner's infant daughter was seated, unrestrained, in the backseat of the get-away car.  (PSR ¶¶ 14-32, 54.)[1]

On August 29, 2005, petitioner was sentenced by this Court to 300 months imprisonment, namely, 216 months for his convictions of two counts of armed bank robbery and 84 months, consecutive, for his conviction of using and carrying a firearm during a crime of violence.  Petitioner qualified for Career Offender status under Sentencing Guideline § 4B1.2 [Nov. 1, 2002 Ed.] based on his two prior convictions for "crimes of violence," which included a conviction for second degree robbery (Penal Code ("PC") § 211).

On June 10, 2016, petitioner filed his 2255 motion.  Petitioner argues that, pursuant to <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), his sentence was imposed in violation of the Constitution or U.S. laws and exceeded the maximum authorized by law.  Petitioner claims that: (1) second degree robbery and armed bank robbery are not

---

[1] The vehicle contained a loaded 9-millimeter semi-automatic rifle, a 30-round capacity clip, two air pistols, and stolen money.

"crimes of violence" under Career Offender Guideline § 4B1.2 and (2) his predicate convictions for armed bank robbery are not "crimes of violence" under 18 U.S.C. § 924(c)(3).

Petitioner's motion is defaulted, timed-barred and lacks merit. Thus, the motion should be dismissed, denied, or dismissed in part and denied in part.  See United States v. Allen, 157 F.3d 661, 668 (9th Cir. 1998) (affirming in part a denial of a § 2255 motion and vacating in part with instructions to dismiss for lack of jurisdiction).

 First, because the collateral attack waiver in the plea agreement bars this claim, the claim is procedurally defaulted, and because petitioner asserts his claim more than one year after his conviction became final, the motion should be dismissed.

Second, in the alternative, because petitioner's claims are without merit, his motion should be denied or dismissed.  Even after Johnson, petitioner's prior conviction for second degree robbery constitutes a crimes of violence under the Career Offender Guideline; and armed bank robbery continues to qualify as crimes of violence under § 924(c) and the Career Offender Guideline.

II.  STATEMENT OF FACTS

A.  Petitioner's Conviction and Sentence

Pursuant to a plea agreement, on January 15, 2004, petitioner plead guilty to two counts of violating 18 U.S.C. §§ 2113(a),(d), armed bank robbery, and to one count of violating 18 U.S.C. § 924(c), using and carrying a firearm during a crime of violence.  (CR 49.) In the plea agreement, the parties agreed that petitioner was a career offender under U.S.S.G § 4B1.1(a); that his criminal history category was VI; that the applicable Guideline range was 272 months

to 319 months, pursuant to U.S.S.G § 4B1.1(c)(2)[Nov. 1, 2002 Ed.]; and that petitioner was to be sentenced to 319 months imprisonment. (CR 44; Pet. Ex. C at ¶¶ 16(a)-(c) & 17(b)).[2]

The PSR, utilizing the November 1, 2002 edition of the Guidelines, concluded that petitioner was a Career Offender pursuant to U.S.S.G. § 4B1.1 based the instant offense of armed bank robbery and his two prior felony convictions (robbery and assault with a deadly weapon on a police officer) being "crimes of violence". (PSR ¶¶ 38, 68-70.)  The PSR determined that petitioner's total offense level was 31 with Criminal History Category VI and a corresponding initial Sentencing Guideline range of 188 to 235 months, excluding the consecutive sentence for the § 924(c) count.  However, the PSR then found that, pursuant to Guideline § 4B1.1(c)(3)[Nov. 1, 2002 Ed.], because of petitioner's conviction for 924(c), his Guideline Range increased to 262 to 327 months.  (PSR ¶¶ 131-132.)

On August 29, 2005, petitioner was sentenced to a term of 300 months imprisonment with this term consisting of 216 months for the two armed bank robbery counts [Counts 1 & 3] and 84 months for the 924(c) count [Count 2], to be served consecutively.  (CR 84).

As relevant here, petitioner's plea agreement contained a waiver of appeal and collateral attack by which he gave up any right to, "bring a post-conviction collateral attack on the conviction or sentence, . . . except a post-conviction collateral attack based on . . . an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction." (Pet.

---

[2] All Sentencing Guideline Sections refer to the November 1, 2002 Edition of the Guidelines with the April 30, 2003 Amendments as were utilized in the PSR, unless otherwise indicated.  See PSR ¶ 38.

1   Ex. C at ¶ 23).   In exchange, the government agreed to (1) dismiss an

2   additional § 924(c) count (Count Four of the Indictment), which would

3   have imposed, at least, an additional seven year mandatory minimum

4   consecutive term of imprisonment; and (2) only utilize petitioner's

5   admission to several other bank robberies (namely, three bank

6   robberies that occurred between July and November 2002) to support

7   the imposition sentence agreed upon in the plea agreement.   (Pet. Ex.

8   C at ¶¶ 2, 20(b) and 20(d)).

9       **B.   Petitioner's Appeal**

10      On August 31, 2005, petitioner filed a notice of appeal.   (CR 86

11  & 88.)[3]  On April 11, 2016, petitioner filed a brief pursuant to

12  Anders v. California, 386 U.S. 738 (1967) declaring that petitioner's

13  attorney had researched the applicable potential appellate issues and

14  that an appeal would be without merit.[4]

15      **C.   Johnson II, Welch, and Dimaya**

16      On June 26, 2015, the Supreme Court decided Johnson v. United

17  States, 135 S. Ct. 2551 (2015), holding that the residual clause of

18  the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii),

19  is void for vagueness.   The ACCA residual clause defined a "violent

20  felony" as a crime "that otherwise involves conduct that presents a

21  serious potential risk of physical injury of another."   On April 18,

22  2016, the Supreme Court held in Welch v. United States, 136 S. Ct.

23  1257 (2016), that Johnson announced a new substantive rule of

24  constitutional law that applies retroactively on collateral review to

25      [3] "CR" refers to the underlying criminal case's docket, and "CV"
26  refers to the civil § 2255 case's docket.

        [4] See Docket Entry No. 14 for the Court of Appeals for the Ninth
27  Circuit Case No. 05-50691("COA").   On September 14, 2006, the Ninth
    Circuit dismissed petitioner's appeal and on October 6, 2006, the
28  Ninth Circuit issued a mandate.   (CR 109; Docket No. 28 COA Case.)

1   ACCA-enhanced sentences.  Id. at 1264-68.  In neither decision did

2   the Court address whether Johnson applies to other sentence-

3   enhancement provisions containing residual clauses, like 18 U.S.C.

4   § 924(c)(3).  Nor did the Supreme Court address whether the holding

5   in Johnson applies to identical language in USSG § 4B1.2's Career

6   Offender Guideline and whether the ruling applies retroactively on

7   collateral review to claims based on the Sentencing Guidelines.[5]

8        Although the Ninth Circuit in Dimaya v. Lynch, 803 F.3d 1110

9   (9th Cir. 2015), pet. for cert. filed June 10, 2016 (No. 15-1498),

10  extended Johnson to the materially identical residual clause

11  definition of a "crime of violence" in 18 U.S.C. § 16(b), no court of

12  appeals has extended Johnson to § 924(c)(3).  Neither the Ninth

13  Circuit nor the two other circuits with holdings similar to Dimaya

14  have extended Johnson to § 924(c)(3), and three circuits concluded

15  that Johnson does not extends to § 924(c)(3).[6]

16       **D.   Petitioner's 2255 Motion**

17       First, petitioner argues that, after Johnson, PC § 211 and armed

18  bank robbery are no longer a crime of violence under USSG § 4B1.2;

19  and second, a conviction for armed bank robbery is not a "crime of

20  violence" under § 924(c).  Petitioner asserts that Johnson

21       [5] Whether Johnson applies to the United States Sentencing

22  Guidelines and whether it does so retroactively are before the
    Supreme Court in Beckles v. United States, S. Ct. No. 15-8544, 2016

23  WL 1029080 (June 27, 2016) (order granting certiorari).

        [6] Similarly, the majority of Courts of Appeals have concluded

24  that Johnson does not extend retroactively for collateral attacks
    based on the Career Offender Guideline.  Donnell v. United States, --

25  - F.3d ---, 2016 WL 3383831 (8th Cir. Jun. 20, 2016); In re Arnick, -
    -- F.3d ---, 2016 WL 3383487 (5th Cir. Jun. 17, 2016); In re Griffin,

26  --- F.3d ---, 2016 WL 3002293 (11th Cir. May 25, 2016); but see In re
    Patrick, No. 16-5353, --- F.3d ---, 2016 WL 4254929 (6th Cir. Aug.

27  12, 2016); In re Hubbard, --- F.3d ---, 2016 WL 3181417 (4th Cir.
    June 8, 2016).  These courts have reasoned that Johnson nor Welch

28  announced a new rule made expressly retroactive to the Guidelines.

                                      5

invalidated § 924(c)(3)'s residual clause and, therefore, his armed bank robbery convictions cannot qualify as crimes of violence under § 924(c)(3)(B).[7]  He also contends that § 924(c)(3)'s elements clause [§ 924(c)(3)(A)] does not categorically cover his convictions because the armed bank robbery statute does not require intentional or threatened use of force. [8]

**III. ARGUMENT**

    **A.**   **Petitioner's Claims are Procedurally Barred Because He Waived Collateral Review, Procedurally Defaulted, and Brought Them Too Late**

        1.   <u>Petitioner's Collateral Attack Waiver Should Be Enforced</u>

A petitioner's knowing and voluntary waiver of the statutory right to collaterally attack his sentence is generally enforceable

---

[7] Section 924(c)(3) defines "crime of violence" as "an offense that is a felony" and:
"(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (the "elements" or "force" clause); or
"(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "residual" clause).  18 U.S.C. § 924(c)(3).

[8] Under the Guidelines, a defendant is a career offender if the defendant has "at least two prior felony convictions of either a crime of violence . . . or a controlled substance offense."  U.S.S.G. § 4B1.1(a).  A "crime of violence" is defined as any offense that:

(1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "elements" or "force" clause); or (2) "is burglary of a dwelling, arson, or extortion, involves use of explosives" (the "enumerated crimes"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause).
<u>Id.</u> at § 4B1.2(a).  Petitioner argues that <u>Johnson</u> retroactively invalidated § 4B1.2(a)'s residual clause.

and must be enforced.  United States v. Reves, 774 F.3d 562, 566 (9th Cir. 2014) (holding that express, knowing, and voluntary collateral review waiver was enforceable).  Where a petitioner has relinquished the right to collaterally challenge his sentence, courts should not evaluate the merits of any § 2255 motion contending that the sentence was incorrectly or impermissibly imposed.  See, e.g., Hicks v. United States, 155 Fed. Appx. 274 (9th Cir. 2005) (affirming denial).

Prohibiting petitioners from pursuing collateral attacks they expressly agreed not to pursue advances the strong public policy supporting plea agreements and their enforcement.  See United States v. Navarro-Botello, 912 F.2d 318, 321 (9th Cir. 1990).  The Ninth Circuit has emphasized that the negotiation of waivers is a proper and sensible part of the plea bargaining process and helps to ensure the important benefit of finality.[9]  Id. at 322.  Thus, where a petitioner has waived his right to challenge his sentence, a court "need not reach the merits" of the petitioner's claim that his sentence was impermissibly enhanced based on an incorrect "crime of violence" determination.  Medina-Carrasco, 815 F.3d at 462.[10]

Here, petitioner agreed to waive his right to bring a collateral attack in exchange for huge, multiple benefits, namely, to avoid

---

[9]  The Ninth Circuit has specifically held that the waiver of the right to appeal a sentence necessarily encompasses any right to argue that the Sentencing Guidelines were misapplied.  United States v. Medina-Carrasco, 815 F.3d 457, 462 (9th Cir. 2015).

[10] Numerous district courts have dismissed § 2255 petitions raising Johnson claims where a defendant waived his right to collaterally attack his sentence in his plea agreement.  See, e.g., United States v. Inoshita, No. 15-00159JMS, 2016 WL 2977237, *4 (D. Haw. May 20, 2016). ("In sum, [petitioner's] waiver encompasses the right to file a § 2255 motion, except under circumstances not applicable in this case, and he made the waiver knowingly and voluntarily.  Thus, [the] waiver is valid.").

7

1   prosecution on an additional § 924(c) count (Count Four) and three

2   other bank robberies, which could have resulted in a life sentence

3   for petitioner.  (Pet. Exh. C at ¶ 20(d)).

4        The only limitation on the waiver was for claims based on

5   ineffective assistance of counsel, newly discovered evidence, or an

6   "explicitly retroactive change in the applicable Sentencing

7   Guidelines, sentencing statutes, or statutes of conviction."  (Pet.

8   Ex. C at ¶ 23).  As none of these exceptions (or any other exception)

9   applies, this Court should enforce petitioner's waiver.  See Reves,

10  774 F.3d at 566; Abarca, 985 F.2d at 1014.

11       Johnson is not a "change in the applicable Sentencing

12  Guidelines, sentencing statutes, or statutes of conviction."  Rather

13  Johnson is a judicial decision.  Moreover, Johnson, while

14  subsequently made retroactive by the Supreme Court in Welch as to

15  ACCA-enhanced sentences, was not itself "explicitly retroactive" and

16  has not been made retroactive to anything other than ACCA-enhanced

17  sentences -- let alone, the "Sentencing Guidelines, sentencing

18  statutes, or statutes" applicable to petitioner.  Thus, Johnson does

19  not satisfy the "explicitly retroactive change" exception.

20       Petitioner also argues that his waiver is unenforceable because

21  his sentence was imposed "illegally" and in "violation of the

22  Constitution."  Not true.  The Ninth Circuit has defined an "illegal

23  sentence" in the appeal waiver context and held that the term "has a

24  precise legal meaning," United States v. Vences, 169 F.3d 611, 613

25  (9th Cir. 1999), limited to sentences that "exceed[] the permissible

26  statutory penalty for the crime or violate[] the Constitution," e.g.,

27  United States v. Bibler, 495 F.3d 621, 624 (9th Cir. 2007).  Here,

28  petitioner's sentence did not "exceed the permissible statutory

8

penalty for [his] crime," <u>id.</u>, because he was sentenced to less than the statutory maximum.

In addition, petitioner erroneously argues that because <u>Johnson</u> was a constitutional holding, his sentence was imposed in violation of the Due Process Clause and violates the Constitution.  Sentencing a defendant following an erroneous application of the Sentencing Guidelines does not result in a sentence imposed in violation of Due Process or otherwise violate the Constitution.  Rather, it results in a lawful sentence at which the Court arrived after following incorrect advice, in this case, allegedly incorrect advice from the Sentencing Commission through its definition of "crime of violence" in its advisory Sentencing Guidelines.  It is of no difference that the "crime of violence" definition is no longer valid because of <u>Johnson's</u> Due Process holding.  The Eleventh Circuit explained en banc,

> [Defendant's] claim that a sentencing guidelines provision was misapplied to him is not a constitutional claim.  If it were, every guidelines error would be a constitutional violation.  However prescient the Founders may have been in other respects, they did not think to incorporate the sentencing guidelines into the Constitution or Bill of Rights.  Nor is it plausible to suggest, as [defendant] does, that every error adversely affecting a defendant's sentence violates the Due Process Clause.  Sometimes a cigar is just a cigar, and sometimes an error is just an error.

<u>Gilbert v. United States</u>, 640 F.3d 1293, 1321-22 (11th Cir. 2011).

The same is true here.  Petitioner's motion should accordingly be denied or dismissed as waived.

## 2.  <u>Petitioner's claim is procedurally defaulted</u>

Petitioner's claim is procedurally defaulted.  A defendant defaults a claim by not raising it before the trial court or on direct appeal.  <u>See</u>, <u>e.g.</u>, <u>United States v. Frady</u>, 456 U.S. 152, 162

9

1   (1981).  Petitioner must satisfy a stringent standard before his
2   unpreserved claims can be addressed: demonstrating both "cause" and
3   "actual prejudice."  Bousley v. United States, 523 U.S. 614, 622
4   (1998) (defaulted claim may be "raised in habeas only if the
5   defendant can first demonstrate . . . 'cause' and actual
6   'prejudice'").  Petitioner fails both prongs of this standard.

7       "Cause" is construed extremely narrowly.  The Supreme Court has
8   excused default only where a defendant received ineffective
9   assistance of counsel, Edwards v. Carpenter, 529 U.S. 446, 451
10  (2000); where the claim was "novel," Reed v. Ross, 468 U.S. 1, 16
11  (1984); or where the defendant was actually innocent, see, e.g.,
12  McQuiggin v. Perkins, 133 S. Ct. 1924, 1932 (2013).

13      Petitioner Johnson claim is not based on a newly recognized rule
14  that is "so novel that its legal basis is not reasonably available,"
15  and thus he could not have been expected to raise it earlier.
16  Bousley, 523 U.S. at 622.  It is not enough to show his claim was
17  legally foreclosed during the time when he could have appealed;
18  petitioner must show the new rules that he invokes were then
19  virtually unknown.  See id.; see also Stewart v. LaGrand, 526 U.S.
20  115, 119-20, (1999).  This he cannot do.

21      At the time of petitioner's sentencing, arguments challenging
22  the ACCA's identically worded residual clause as unconstitutionally
23  vague were not novel.  To the contrary, "the Federal Reporters were
24  replete with cases" discussing challenges to the ACCA's identically
25  worded residual clause on vagueness grounds.  Bousley, 523 U.S. at
26  622.  Similarly, challenges to whether various prior convictions
27  constituted crimes of violence were common.  The fact that such
28  challenges were not successful does not excuse petitioner's failure

1    to pursue a similar challenge to the residual clause of § 4B1.2

2    because "futility cannot constitute cause if it means simply that a

3    claim was unacceptable to that particular court at that particular

4    time."  Bousley, 523 U.S. at 623 (internal quotation marks omitted).

5         Nor can petitioner establish prejudice.  The prejudice prong

6    requires that the defendant demonstrate that the alleged error "not

7    merely created a possibility of prejudice, but that [it] worked to

8    [his] actual and substantial disadvantage, infecting [his] entire

9    [proceedings] with error of constitutional dimensions."  United

10   States v. Braswell, 501 F.3d 1147, 1150 (9th Cir. 2007).  Petitioner

11   cannot make this showing because he was sentenced well below the

12   statutory maximum term of life imprisonment, see 18 U.S.C. §924(c),

13   which the Court could have imposed regardless of his Guidelines

14   range, particularly in the post-Booker world.  See United States v.

15   Estrada, No. CV-07-367-S-BLW, 2008 WL 5069083, at *4 (D. Idaho July

16   3, 2008) ("[defendant] cannot show prejudice given that his sentence

17   was not above the relevant statutory maximum.").  In fact, the 300-

18   month sentence was below the calculated Guidelines range of 262 to

19   327 months. (PSR ¶ 131.)

20              3.   Court's Failure to Read the Collateral Review Waiver
                     to Petitioner Does Not Bar Dismissal of § 2255 Motion

21

22        Petitioner argues that the Court's failure during the plea

23   colloquy to specifically read to petitioner the collateral review

     waiver invalidates the waiver.

24

25        The Ninth Circuit has held a defendant may expressly waive his

26   right to appeal or to seek post-conviction relief in a § 2255

     petition as long as defendant makes the waiver knowingly and

27

28   voluntarily.  See United States v. Pruitt, 32 F.3d 431, 433 (9th Cir.

                                      11

1   1994) ("A plea agreement does not waive the right to bring a § 2255

2   motion unless it does so expressly."). "[A]n express waiver of the

3   right to appeal in a negotiated plea of guilty is valid if knowingly

4   and voluntarily made." United States v. Bolinger, 940 F.2d 478, 480

5   (9th Cir. 1991). Moreover, the Ninth Circuit has held, **"[i]n our**

6   **view, a Rule 11 colloquy on the waiver of the right to appeal is not**

7   **a prerequisite to a finding that the waiver is valid; rather, a**

8   **finding that the waiver is knowing and voluntary is sufficient.**"

9   (emphasis added) United States v. DeSantiago-Martinez, 980 F.2d 582,

10   583 (9th Cir.), opinion amended and superseded on denial of reh'g, 38

11   F.3d 394 (9th Cir. 1992). In DeSantiago-Martinez, the Ninth Circuit

12   confirmed the validity of the appeal waiver and dismissed a

13   defendant's appeal after determining that the language of the appeal

14   waiver provision in the plea agreement was clear. Id. Similarly, in

15   the present case, the written plea agreement clearly advised

16   petitioner of his collateral review waiver and the Court confirmed

17   that petitioner had read and understood the entire plea agreement.

18   Therefore, the waiver in this case was valid. See 38 F.3d at 395.

19        In particular, petitioner and his counsel signed the written

20   plea agreement declaring that they both read and "carefully

21   discussed" "every part" of the plea agreement and the "consequences

22   of entering into this agreement". (Pet. Exh. C at pgs. 14-15.) As

23   such, petitioner and his counsel discussed and understood the

24   agreement's collateral review waiver, prior to and during the plea

25   colloquy. In addition, the Court confirmed at great length with

26   petitioner that he and his attorney had read and understood the

27   entire plea agreement. (Pet. Exh. C at pgs. 11-18.) This is

28   sufficient to enforce the waiver. See United States v. Michlin, 34

F.3d 896, 898 (9th Cir. 1994) ("We have held that so long as the plea agreement contains an express waiver of appellate rights, a Rule 11 colloquy concerning the waiver is not required" citing DeSantiago, 980 F.2d at 583.[11]

Under the totality of the record, petitioner acknowledged he read and understood the plea agreement. See United States v. Ma, 290 F.3d 1002, 1005 (9th Cir. 2002) (dismissing appeal where defendant acknowledged that she read and understood the plea agreement);[12] DeSantiago-Martinez, 980 F.2d at 582-3 (if waiver of appeal is valid, appeal must be dismissed). Thus, petitioner's knowing and voluntary waiver of his right to collaterally attack his sentence received in exchange for benefits (including dismissed charges) requires denial of § 2255 motion. See United States v. Navarro-Botello, 912 F.2d 318, 322 (9th Cir. 1990) (Finding a defendant could not ignore his part of the bargain in a plea agreement after obtaining concessions from the government).

---

[11] In fact, the Court incorporated the written plea agreement, which included the collateral review waiver, into the change of plea proceeding. (Pet. Exh. C at pgs. 11-12.). As such, the written plea agreement is evidence the Court may use in determining "whether defendant was aware of his rights". See United States v. Vonn, 224 F.3d 1152, 1155 (9th Cir. 2000)("The requirements of Rule 11 are so easy to follow that we will not go beyond the plea proceeding in considering whether the defendant was aware of his rights."). Here, the plea agreement is replete with assurances that petitioner read, discussed and understood with his counsel the entire agreement which contained the waiver.

[12] Petitioner relies on United States v. Arellano-Gallegos, 387 F.3d 794 (9th Cir. 2004) (as amended), to argue that the colloquy here was insufficiently precise. But in that case, "[n]o mention of the waiver of appeal was ever made in open court until the time of sentencing." 387 F.3d at 796. And "there is nothing elsewhere in the record to indicate that Arellano understood the right to appeal his sentence." Id. at 797. However, here, the record is clear that petitioner knew he at the plea colloquy that he was waiving his right to file a 2255 motion.

        4.   Petitioner's § 2255 Motion Is Time-Barred.

     Even if petitioner's challenges were not defaulted, they are
untimely under 28 U.S.C. § 2255(f).  For motions under § 2255, "[a]
1-year period of limitation shall apply."  28 U.S.C. § 2255(f).  As
relevant here, "[t]he limitation period shall run from the latest of
(1) the date on which the judgment of conviction becomes final; . . .
[or] (3) the date on which the right asserted was initially
recognized by the Supreme Court, if that right has been newly
recognized by the Supreme Court and made retroactively applicable to
cases on collateral review."  Id.  A defendant's conviction becomes
final at the latter of when his petition for a writ of certiorari
with the United States Supreme Court is denied, or the 90-day period
for filing such a petition elapses.  Clay v. United States, 537 U.S.
522, 532 (2003); S. Ct. R. 13.1.

     In this case, petitioner's conviction became final, at the very
latest, 90-days after the issuance of the mandate by the Ninth
Circuit on October 6, 2006, dismissing defendant's appeal.  See Clay,
537 U.S. at 532.  Petitioner, however, did not file the instant
§ 2255 motion until June 10, 2016, over nine years after his
conviction became final.  As a result, his motion is time-barred and
should be dismissed.

     Petitioner argues that, because Johnson was decided after the
expiration of the limitations period, his claim is still timely
because it falls within the situation identified in 28 U.S.C.
§ 2255(f)(3) - namely, that he is filing his motion within one year
of "the date on which the right asserted was initially recognized by
the Supreme Court," and the right has been "newly recognized by the
Supreme Court and made retroactively applicable to cases on

                                   14

1   collateral review."  28 U.S.C. § 2255(f)(3).  However, the right

2   recognized in Johnson has not been made retroactively applicable to

3   either § 924(c) or Career Offender Guideline cases on collateral

4   review.  Accordingly, petitioner's claims do not fall within the

5   exception identified in 28 U.S.C. § 2255(f)(3), and is thus untimely.

6                 5.   *Johnson* does not apply to § 924(c)

7       Petitioner's claims are untimely because Johnson does not extend

8   retroactively to his § 924(c) conviction.

9       Johnson held that the ACCA's residual clause violates the Due

10  Process Clause's "prohibition of vagueness in criminal statutes"

11  because "the indeterminacy of the wide-ranging inquiry required by

12  the residual clause both denies fair notice to defendants and invites

13  arbitrary enforcement by judges."  135 S. Ct. at 2556-57.  The

14  Supreme Court concluded that "[t]wo features of the residual clause

15  conspire to make it unconstitutionally vague."  Id.; see also id. at

16  2560 (Although "[e]ach of the uncertainties in the residual clause

17  may be tolerable in isolation," it was "'their sum [that made] a task

18  for us which at best could be only guesswork.'").  First, the ACCA

19  residual clause requires courts not only to discern the "ordinary

20  case" of the offense and determine whether the "physical acts that

21  make up the crime will injure someone," but also to evaluate the risk

22  that injury might occur after the commission of the offense - a

23  "speculative" inquiry that is "detached from statutory elements," id.

24  at 2557-58, and could encompass injury "remote from the criminal

25  act," id. at 2559.  Second, the ACCA residual clause is unclear about

26  what level of risk qualifies as a "serious potential risk,"

27  especially because the word "otherwise" indicates that the level of

28  risk must be interpreted in light of the four preceding enumerated

1    offenses, which are "far from clear in respect to the degree of risk

2    each poses."  Id. at 2558 (citation and internal quotation marks

3    omitted).

4         No Court of Appeals has extended Johnson to § 924(c)(3).  In

5    fact, three Courts of Appeals have analyzed whether Johnson extends

6    to § 924(c)(3) have concluded that it does not. See United States v.

7    Taylor, 814 F.3d 340, 375-76 (6th Cir. 2016).[13]

8                    a.   Significant differences make § 924(c)(3) narrower
                         and easier to construe than the ACCA
9

10        In Taylor, the Sixth Circuit held that Johnson is inapplicable

11   to § 924(c)(3)'s residual clause because "significant differences

12   mak[e] the definition of 'crime of violence' in § 924(c)(3)(B)

13   narrower than the definition of 'violent felony' in the ACCA residual

14   clause."  814 F.3d at 376.  It found persuasive that, unlike the

15   ACCA, which requires courts to evaluate "risk of physical injury to a

16   victim," § 924(c)(3) focuses on the "[r]isk of physical force against

17   a victim [which] is much more definite."  Id. at 376-77.  "[T]he

18   language of § 924(c)(3)(B) effectively requires that the person who

19   may potentially use physical force be the offender" and that the

20   "risk of force [be] confined to the offense itself."  Id. at 377. The

21   Sixth Circuit also concluded that, unlike the ACCA residual clause,

22   § 924(c)(3)(B) "does not allow a court to consider risk-related

23   conduct beyond that which is an element of the predicate since the

24

25        ───────────────────

26        [13] United States v. Hill, No. 14-3872, 2016 WL 4120667, *7 (2d
     Cir. Aug. 3, 2016); United States v. Prickett, No. 15-3486, --- F.3d
     ---, 2016 WL 4010515, *1 (8th Cir. July 27, 2016) (per curiam).  They
27   have concluded that the features which made the ACCA residual clause
     unconstitutionally vague are not remotely present to the same degree
28   in § 924(c)(3)'s residual clause.

                                    16

provision covers offenses that 'by [their] nature' involve a
substantial risk that force may be used." Id. [14]

>    b.    *Dimaya does not require an extension of Johnson
>          to § 924(c)*

Defendant insists that the Ninth Circuit's extension of Johnson
to 18 U.S.C. § 16(b) in Dimaya, 803 F.3d 1110, means that Johnson
applies equally to the residual clause of § 924(c)(3).   However,
defendant is wrong.   The Second Circuit in Hill rejected the
reasoning of those decisions that voided § 16(b) after Johnson.   See
2016 WL 4120667, at *11-*12.   Hill found "these opinions unpersuasive
for three reasons":

- "each greatly underestimates -- or misunderstands -- the
  significance of the list of enumerated offenses in the
  ACCA's residual clause to the decision in Johnson";

- "these cases either ignore or minimize the other textual
  distinctions between the residual clause and the language
  of § 16(b)"; and

- "each case dismisses the significance of the Supreme
  Court's fraught precedent interpreting the ACCA's residual
  clause."

---

[14] The court explained that, unlike the ACCA residual clause,
"[s]ection 924(c)(3)(B)'s requirement that physical force 'be used in
the course of committing the offense" "does not allow courts to
consider 'physical injury [that] is remote from the criminal act.'"
Id. (quoting Johnson, 135 S. Ct. at 2559.); see also Hill, 2016 WL
4120667, *10 (holding that Johnson is inapplicable because the text
of the residual clause of § 924(c)(3)(B) "is distinctly narrower").

     The Sixth Circuit in Taylor also held that Johnson does not
apply to § 924(c)(3)'s residual clause for another compelling reason:
§ 924(c)(3) "does not complicate the level-of-risk inquiry by linking
the 'substantial risk' standard, through the word otherwise, 'to a
confusing list of examples.'"  814 F.3d at 377 (quoting Johnson, 135
S. Ct. at 2561).  Section 924(c)(3) has no such list of examples.
Consequently, § 924(c)(3) does not require analogizing the level of
risk involved in a defendant's conduct to burglary, arson, extortion,
or the use of explosives - a facet of the ACCA risk analysis that the
Supreme Court had struggled with since its first residual-clause
decision.  Id.

17

Id.   The Second Circuit thus concluded that these decisions "extend" Johnson II "in a way flatly inconsistent with that decision's own articulation of the limitations of its holding." Id. at *12.[15]

Based on the uncontradicted analysis of § 924(c)(3) of the Second Circuit in Hill, the Sixth Circuit in Taylor, and the Eighth Circuit in Prickett, this Court should also find that Johnson does not apply to § 924(c)(3).  At a minimum, this Court should deny petitioner's motion on the basis that Johnson does not so apply because none of the Courts of Appeals with Dimaya-like holdings have held that Johnson applies to § 924(c)(3) retroactively on collateral review.  Accordingly, because Johnson does not apply retroactively to petitioner's convictions, petitioner's claims do not fall under the exceptions identified in 28 U.S.C. § 2255(f)(3); the claims are untimely and should be dismissed.

      6.   *Johnson* similarly does not apply retroactively to Sentencing Guidelines challenges on collateral review

Defendant's challenges to his enhancements under the Career Offender Guideline are similarly untimely because Johnson does not apply retroactively to Guidelines challenges on collateral review.

---

[15] Indeed, the Sixth Circuit has both (1) a Dimaya-like holding that § 16(b) is void for vagueness under Johnson, see Shuti v. Lynch, No. 15-3835, --- F.3d ---, 2016 WL 3632539, *8 (6th Cir. July 7, 2016),[15] and (2) a holding that § 924(c)(3) is not void for vagueness under Johnson, see Taylor, 814 F.3d at 375-76.

The Ninth Circuit currently has before it two cases submitted for decision asking whether Johnson applies to § 924(c)(3): United States v. Begay, No. 14-10080, and United States v. Brown, No. 14-10393.  Particularly telling that the Ninth Circuit does not view Dimaya as controlling whether Johnson applies to § 924(c)(3) is that the Ninth Circuit has been issuing orders granting applications for permission to file a second or successive § 2255 motion raising a Johnson-based challenge to a § 924(c)(3) conviction that state: "The district court may wish to stay proceedings pending this court's decision[] in . . . 14-10080, United States v. Begay." E.g., June 2, 2016, Order in Caver v. United States, No. 15-73779.

18

1    Under the Supreme Court's retroactivity analysis, which is
2    commonly known as a Teague analysis, new rules of criminal procedure
3    do not apply retroactively to cases that became final before the
4    decisions announcing those rules were issued.  Teague v. Lane, 489
5    U.S. 288, 310 (1989); see also Stringer v. Black, 503 U.S. 222, 228
6    (1992) (referring to the "interests in finality, predictability, and
7    comity underlying our new rule jurisprudence").  A Teague analysis
8    involves three questions.  First, whether the defendant is seeking to
9    benefit from a "new" rule.  After all, Teague was designed to
10   safeguard the threat to finality that is posed by applying rules "not
11   in existence at the time a conviction became final."  Teague, 489
12   U.S. at 309.  If the rule is new, then the second question is whether
13   the rule is "procedural" as opposed to substantive.  If the rule is
14   both new and procedural, Teague bars the courts from announcing or
15   applying the rule retroactively in cases on collateral review unless
16   the rule falls within a narrow exception permitting the retroactive
17   application of "watershed" rules of criminal procedure, i.e., rules
18   on par with Gideon v. Wainwright, 372 U.S. 335 (1963).  See Teague,
19   489 U.S. at 311.

20            a.   Procedural versus substantive rules
21        Substantive constitutional rules include rules that "place
22   particular conduct or persons covered by statute beyond the
23   [government's] power to punish."  Schriro v. Summerlin, 542 U.S. 348,
24   352 (2004).  Substantive conduct-restricting constitutional rules
25   include decisions holding that the First Amendment prohibits criminal
26   prosecution for flag-burning.  See, e.g., United States v. Eichman,
27   496 U.S. 310 (1990).  Substantive penalty-restricting constitutional
28   rules include decisions holding that the Eighth Amendment bars the

1  death penalty for certain offenders.  See, e.g., Roper v. Simmons,

2  543 U.S. 551 (2005) (juveniles).  Those new rules are retroactive in

3  cases on collateral review because they "necessarily carry a

4  significant risk that a defendant stands convicted of an act that the

5  law does not make criminal or faces a punishment that the law cannot

6  impose upon him."  Schriro, 542 U.S. at 352 (quotation marks and

7  citation omitted).  A substantive sentencing rule, then, is one that

8  changes the lawful boundaries of punishment.

9       Procedural rules, unlike substantive rules, do not forbid

10  prosecution or conviction for a crime, or otherwise alter the

11  permissible range of outcomes; rather, they concern how the ultimate

12  determination (guilt or innocence or the appropriate sentence) must

13  be reached.  They include such rules as those requiring facts to be

14  treated as elements of a crime, see Apprendi v. New Jersey, 530 U.S.

15  466 (2000), or regulating the admissibility of certain evidence at

16  trial, see Crawford v. Washington, 541 U.S. 36 (2004).  In the case

17  of Apprendi and its progeny, the rules require a jury finding as to

18  the operative fact beyond a reasonable doubt; in the case of

19  Crawford, the rule requires an opportunity for cross-examination of

20  an out-of-court declarant.  Neither changes the range of legally

21  permissible outcomes.  A procedural sentencing rule, then, includes

22  one that alters the factors that a court may consider in imposing a

23  discretionary sentence within an authorized range, as such a sentence

24  would not change the lawful boundaries of punishment.

25       New procedural rules therefore do not implicate the concerns

26  that justify the retroactive application of new substantive rules:

27  they do not produce a class of person who have been convicted of non-

28  criminal conduct or, as is relevant here, alter the range of

1  sentences for which the defendant is eligible, but instead "merely

2  raise the possibility" that the now-invalid procedure might have

3  affected the course of the proceeding.  See Schriro, 542 U.S. at 352.

4  This "more speculative connection" to outcomes has led the Supreme

5  Court to deny retroactive effect to new procedural rules in federal

6  collateral review and thereby protect the finality of criminal

7  judgments.  Id.; see also Bousley, 523 U.S. at 620; Teague, 489 U.S.

8  at 311.

9          b.   In the Sentencing Guidelines context, Johnson is
              a procedural rule subject to Teague's non-
10             retroactivity directive.[16]

11      In Welch, the Supreme Court held that Johnson announced a new

12  substantive rule of constitutional law that, because it is

13  substantive, applies retroactively on collateral review in cases

14  involving ACCA-enhanced sentences.  But the Supreme Court's holding

15  in Welch that Johnson applies retroactively in ACCA cases does not

16  govern the separate question whether Johnson applies retroactively to

17  claims based on the Sentencing Guidelines and raised on collateral

18  review.  The application of Johnson to the ACCA is a substantive

19      [16] The government's position is that the rule in Johnson as
20  applied to the Career Offender Guideline is new, procedural, and non-
    watershed, and is thus subject to Teague's rule of nonretroactivity.
21  The government focuses on the procedural nature of the rule in the
    discussion that follows in the text.  The rule is also new, in that
22  (1) no prior precedent dictated the conclusion that the Guidelines'
    residual clause is unconstitutionally vague, see, e.g., contrary
23  holdings in James v. United States, 550 U.S. 192, 210 n.6 (2007), and
    Sykes v. United States, 131 S. Ct. 2267, 2277 (2010); and (2) no
24  prior precedent dictated the conclusion that the Sentencing
    Guidelines are even amenable to vagueness challenges.

25      The rule is also non-watershed, because the exception for
    watershed procedural rules is intended for rules bearing the same
26  "primacy and centrality" to the criminal justice process as the rule
    of Gideon v. Wainwright, 372 U.S. 335 (1963).  See Tyler v. Cain, 533
27  U.S. 656, 665 (2001) (calling it an "extremely narrow exception");
    Whorton v. Bockting, 549 U.S. 406, 417, 418 (2007) (the Supreme Court
28  has never found that a new procedural rule qualifies as watershed).

change in the law because it necessarily alters the statutory range of permissible sentences, but the application of Johnson to the Guidelines' residual clause produces procedural changes in the sentencing process that are not retroactive on collateral review.[17]

The function of the Johnson rule (that the residual clause is unconstitutionally vague) is markedly different in the Guidelines context than in a case involving the erroneous imposition of a sentence under the ACCA.  In the ACCA context, sentencing a defendant based on the residual clause functions to raise the statutory minimum and maximum terms of imprisonment so that the defendant is exposed to a wholly new and unauthorized range of sentencing options.  Welch, 136 S. Ct. at 1265.  An ACCA error results in a sentence that is "not authorized by substantive law." Id. at 1266.  That error directly implicates the separation of powers principle that federal courts may not impose sentences that are not authorized by Congress.  See id. at 1268 ("[A] court lacks the power to exact a penalty that has not been authorized by any valid criminal statute.").

In the Guidelines context, by contrast, sentencing a defendant in light of an erroneous application of § 4B1.1 does not alter the statutory boundaries for sentencing set by Congress for the crime.  A rule invalidating the crime-of-violence residual clause in the Career Offender Guideline would establish that a defendant's Guidelines

---

[17] In order to grant collateral relief in a Guidelines case based on Johnson, the Court would have to announce or apply two new rules that were not established before Johnson: first, that the Guidelines' residual clause is unconstitutionally vague, and second, that due process vagueness principles apply to the Sentencing Guidelines.

In sum, Johnson applies retroactively to all ACCA cases and in Guidelines cases on direct review, but it does not apply retroactively in Guidelines cases that were final before the decision was announced.

range was incorrectly calculated, but it would not disturb the statutory boundaries for sentencing set by Congress for the crime. An erroneous application of the Career Offender Guideline results in incorrect advice to the sentencing court, but does not authorize an otherwise-inapplicable statutory mandatory minimum sentence or produce a higher-than-otherwise-applicable statutory maximum, as is true under the ACCA with respect to comparable error.[18]  It therefore relates to the "manner of determining" the defendant's sentence, Welch, 136 S. Ct. at 1265, which is the function of a procedural rather than a substantive rule.

The Supreme Court's capital cases reflect the distinction – treating as procedural (and nonretroactive) new constitutional rules that affect the weight or manner of considering factors bearing on whether to impose a death sentence without altering a defendant's eligibility for a capital sentence.[19]  See Welch, 136 S. Ct. at 1266. Even if those errors may have affected the outcome, they remain procedural.  If that is true in the capital context, the same must be true for comparable errors in the non-capital context.

Changing the Guidelines range to recommend a different sentence is of the same, procedural character.  See Molina-Martinez v. United States, 136 S. Ct. 1338, 1345-46 (2016) (improper Guidelines calculation is "significant procedural error") (quoting Gall v.

---

[18] See Mistretta v. United States, 488 U.S. 361, 396 (1989) (Sentencing Guidelines do not usurp the legislative responsibility for establishing minimum and maximum penalties for every crime, but instead operate "within the broad limits established by Congress").

[19] See, e.g., Beard v. Banks, 542 U.S. 406, 408, 420 (2004) (new constitutional rule that juries may consider mitigating factors even if not found unanimously is not retroactive); O'Dell, 521 U.S. at 167 (new constitutional rule that capital defendant may introduce evidence of his parole ineligibility to rebut argument about future dangerousness is not retroactive).

23

1  _United States_, 552 U.S. 38, 51 (2007)).  Like those other erroneously

2  considered factors, the range exerts an influence on the ultimate

3  sentence, _see_ _Peugh v. United States_, 133 S. Ct. 2072, 2081-84

4  (2013), but does not change the authorized range of punishment.  _See_

5  _Molina-Martinez_, 136 S. Ct. at 1346 (Guidelines "inform and instruct

6  the district court's determination of an appropriate sentence").

7  Weighing an improper factor in reaching an authorized sentence within

8  unchanged statutory boundaries is a procedural error that,

9  accordingly, does not merit retroactive effect.

10         _c._   Recent decisions from the Courts of Appeals

11     Three Courts of Appeals have recently held that the Supreme

12  Court has not made the rule announced in _Johnson_ retroactive to

13  Guidelines challenges on collateral review.  _Donnell_, 2016 WL

14  3383831;[20] _In re Arnick_, 2016 WL 3383487;[21] _In re Griffin_, 2016 WL

15  3002293.[22]

16  _____

17     [20] In _Donnell_, the Eighth Circuit refused to permit a collateral
challenge to a career offender enhancement because neither _Johnson_

18  nor _Welch_ announced a new rule made retroactive to the Sentencing
Guidelines.  2016 WL 3383831, at *1, 3.

19     [21] In _Arnick_, the Fifth Circuit reasoned that _Johnson_ did not
address the career offender provision of the Guidelines, and even if

20  _Johnson_ does govern Guidelines challenges on direct review, the
Supreme Court has not held that "this arguably new rule of criminal

21  procedure applies retroactively to cases on collateral review."  2016
WL 3383487, at *1.

22     [22] In _Griffin_, the Eleventh Circuit distinguished the ACCA
context from the Guidelines context for purposes of retroactivity,

23  relying on the distinction articulated above: "The application of
_Johnson_ to the ACCA was a substantive change in the law because it

24  altered the statutory range of permissible sentences."  In re
Griffin, 2016 WL 3002293, at *5.

25
   _In re Rivero_, another recent Eleventh Circuit decision, is also

26  instructive.  797 F.3d 986 (11th Cir. 2015).  In that case, as in
_Griffin_, the court rejected an application for leave to file a second

27  or successive Section 2255 motion.  The court held that "_Johnson_ did
not establish a new rule of constitutional law made retroactive to

28  cases on collateral review by the Supreme Court."  _Id._

                                    24

To be sure, the Fourth Circuit in In re Hubbard and the Sixth Circuit in In re Patrick disagree with the Fifth, Eighth, and Eleventh Circuits' analysis and conclude that "the rule in Johnson is substantive with respect to its application to the Sentencing Guidelines and therefore applies retroactively." In re Hubbard, 2016 WL 3181417, at *7; see also In re Patrick, 2016 WL 4254929, at *3-4 (agreeing with Hubbard).

This Court, however, should follow the majority rule that Johnson is not retroactively applicable to Sentencing Guidelines cases on collateral review, conclude that petitioner's motion does not fall under the exception to the one-year period of limitation in 28 U.S.C. § 2255(f), and thus dismiss the motion as untimely.

**B.   Petitioner's Claims Fail on the Merits.**

Even if this Court declines to dismiss petitioner's motion and instead reaches its merits, the motion should be denied because (1) Johnson does not apply to § 924(c) -- let alone, apply retroactively -- and (2) armed bank robbery remains a crime of violence.

1.   Petitioner's is a career offender because his prior conviction for robbery constitute crimes of violence

a.   Penal Code Section 211 is an enumerated crime of violence and remains a crime of violence

Penal Code § 211 provides that "[r]obbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."

The United States Supreme Court has long held that "Commentary which functions to interpret [a] guideline or explain how it is to be

25

applied controls." Stinson v. United States, 508 U.S. 36, 42-43 (1993) (internal citation and quotation marks omitted). In Stinson, the Supreme Court held that the provision of the commentary to the career offender guideline that excludes felon-in-possession offenses from the definition of "crime of violence," while not "compelled by the guideline text," was "a binding interpretation of the phrase 'crime of violence.'" Id. at 47 (internal quotation mark omitted). In so holding, it concluded that Sentencing Guidelines commentary is "akin to an agency's interpretation of its own legislative rules." Thus, under Stinson, commentary "that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Id. at 38.

Robbery was enumerated as a crime of violence in U.S.S.G. § 4B1.2's Commentary, which was designated as "Application Note 1." The Sentencing Commission's interpretation of the term "crime of violence" to include the offenses listed in the commentary "does not run afoul of the Constitution or a federal statute" and "is not plainly erroneous or inconsistent with § 4B1.2." See Stinson, 508 U.S. at 38 (internal quotation marks omitted). As such, the Commentary to § 4B1.2 is binding and robbery is a per se crime of violence under the Guidelines. See United States v. Rodriguez-Guzman, 506 F.3d 738, 741 (9th Cir. 2007) ("When an offense is specifically enumerated by the Application Notes as a 'crime of violence,' we have consistently drawn the conclusion that the offense is a per se crime of violence under the Guidelines.").

The Supreme Court's decision in Johnson – which implicates only the residual clause of § 4B1.2(a)(2) - does not alter this analysis.

26

1   The Commentary interprets and explains the term "crime of violence,"
2   not just the residual clause.  And consideration of the enumerated
3   offenses - including in the Commentary - does not require application
4   of the test found unconstitutional in <u>Johnson</u>.  <u>See</u> <u>Dawkins v. United</u>
5   <u>States</u>, 809 F.3d 953, 955 (7th Cir. 2016) (per curiam) (finding no
6   issue under <u>Johnson</u> because the court "did not need to resort to the
7   residual clause" to determine that a prior conviction was a "crime of
8   violence" and because the conviction was among enumerated offenses).
9   Accordingly, those enumerated offenses have independent force.
10  <u>United States v. Jeffries</u>,  --- F.3d ---, 2016 WL 2848498, at *1 (5th
11  Cir. May 13, 2016) (per curiam) (the defendant was "not sentenced
12  under the residual clause of § 4B1.2" and had "no arguable claim of
13  relief under <u>Johnson</u>," because his prior conviction was "specifically
14  enumerated [as a] crime of violence under Application Note 1."); 
15  <u>United States v. Marrero</u>, 743 F.3d 389, 398 (3d Cir. 2014) (murder
16  conviction was a "crime of violence" because it is enumerated in
17  Application Note 1); <u>United States v. Hall</u>, 714 F.3d 1270, 1274 (11th
18  Cir. 2013) ("We hold that <u>Stinson</u> controls, and that the definition
19  of 'crime of violence' provided by the Guidelines commentary is
20  authoritative."); <u>United States v. Lockley</u>, 632 F.3d 1238, 1241-42
21  (11th Cir. 2011) (robbery is an offense "specifically designate[d]"
22  as a "crime of violence" pursuant to § 4B1.2); <u>United States v.</u>
23  <u>Walker</u>, 595 F.3d 441, 445 (2d Cir. 2010) (the commentary is "part and
24  parcel" of the Guidelines, and thus robbery is a "crime of violence"
25  because it is so identified in the application note).
26      The structure of Application Note 1 itself shows that its
27  enumerated offenses do not depend upon the residual clause -
28  undercutting the reasoning of <u>United States v. Rollins</u>, No. 13-1731,

27

2016 Lexis App. 15960 (7th Cir. 2016) (en banc); United States v. Soto-Rivera, 811 F.3d 53, 60 (1st Cir. 2016), United States v. Armijio, 651 F.3d 1226, 1234-37 (10th Cir. 2011), and other similar cases relied on by petitioner.  Enumerated offenses are separate from the residual clause in text of the Career Offender Guideline, see § 4B1.2(a)(2); they are identically separate from the residual clause in the Commentary.  After setting forth additional enumerated offenses, Application Note 1 indicates that "[o]ther offenses are included as 'crimes of violence' if" they satisfy the elements test or the residual clause.  U.S.S.G. § 4B1.2, comment. (n.1). Additionally, the Commentary's enumerated offenses include redundant reference to each of the enumerated offenses set forth in the Career Offender Guideline itself: "burglary of a dwelling," "arson," and "extortion."  See USSG § 4B1.2(a)(2); accord id., comment. (n.1) (again listing "burglary of a dwelling," "arson," and "extortion"). A plain reading shows - as other circuits have held - that the other listed offenses thus simply expand upon the enumerated offenses in the Guideline.  E.g., Marrero, 743 F.3d at 397-401; Hall, 714 F.3d at 1272-74.  Though not "compelled by the guideline text," this is a "binding interpretation" of "crime of violence."  Stinson, 508 U.S. at 47.

Petitioner relies on two Fourth Circuit cases, United States v. Leshen, 453 Fed. Appx. 408, 413-15 (4th Cir. 2011) and United States v. Shell, 789 F.3d 335 (4th Cir. 2015), to argue that the Court should discount the commentary.  That argument lacks persuasive value here because the authority cited is not controlling and it addresses situations where there is a conflict between the Guidelines and the commentary.  Here, there is no conflict:  rather the commentary

28

1    expands on the enumerated crimes, and <u>Stinson</u> provides that the Court

2    should look to the commentary as an interpretative guide.   <u>Stinson</u>,

3    508 U.S. at 42-43.

4         Indeed, the Ninth Circuit has consistently held that a

5    conviction under CPC § 211 or a materially similar statute

6    constitutes an enumerated "crime of violence" under the Sentencing

7    Guidelines.   In <u>United States v. Becerril-Lopez</u>, 541 F.3d 881, 892-

8    893 (9th Cir. 2008), the Ninth Circuit held that Section 211 is a

9    crime of violence for purposes of Guidelines § 2L1.2.[23]   <u>Becerril-</u>

10   <u>Lopez</u> held that Section 211 is broader than the federal generic crime

11   of robbery because it encompasses threats to property, rather than

12   just people.   <u>Id.</u> at 891.   The Court concluded, however, that even if

13   "[t]akings through threats to property and other threats of unlawful

14   injury" did not fall within federal generic robbery, they did

15   constitute federal generic extortion.   <u>Id.</u>   Because robbery is

16   enumerated as crimes of violence under the Commentary to § 2L1.2, the

17   Court held that any conviction under CPC section 211 constitutes a

18   crime of violence.   <u>Id.</u> at 892-93; <u>see</u> <u>also United States v.</u>

19   <u>Mazariego-Gomez</u>, --- Fed. Appx. ---, 2016 WL 1554135, *1 (9th Cir.

20   Apr. 18, 2016) (citing <u>Becerril-Lopez</u> as "foreclose[ing]" the

21   defendant's argument that his "prior conviction under Penal Code

22   § 211 is not a crime of violence"); <u>United States v. Manzo-Solano</u>, --

23   - Fed. Appx. ---, 2016 WL 1554120, *1 (9th Cir. Apr. 18, 2016) (same

24   for "second-degree robbery under California Penal Code §§ 211 and

25

26        [23] In relevant part, § 2L1.2 defines "crime of violence" as:
     "any of the following offenses under federal, state, or local law
     . . . robbery, arson, extortion . . . or any other offense under
27   federal, state, or local law that has as an element the use,
     attempted use, or threatened use of physical force against the person
28   of another."

                                  29

212.5(c)").   Relying on <u>Becerril-Lopez</u>, the Court of Appeals held in <u>United States v. Harris</u>, 572 F.3d 1065, 1066 (9th Cir. 2009) (per curiam), that Nevada's robbery statute "categorically qualify as crimes of violence under U.S.S.G. § 4B1.2."   In doing so, the Ninth Circuit concluded that the Nevada statute was "like the California robbery statute analyzed in <u>Becerril-Lopez</u>."   <u>See also</u> <u>United States v. Velasquez-Bosque</u>, 601 F.3d 955, 960 (9th Cir. 2010) (reciting holding of <u>Harris</u> and explaining that "the Nevada statute was indistinguishable from California section 211").   Recently, in <u>United States v. Tate</u>, No. 15-10283, 2016 WL 4191909, at *2 (9th Cir. Aug. 9, 2016) (unpublished), the Ninth Circuit held that CPC section 211 is a crime of violence for purposes of U.S.S.G. § 2K2.1, which relies on § 4B1.2(a) and the Commentary to § 4B1.2. The Ninth Circuit concluded that a defendant, "who committed robbery under § 211, necessarily committed either generic robbery or generic extortion, which are both listed as crimes of violence in §§ 4B1.2(a)(2) and 4B1.2's Application Note 1."   <u>Id.</u>

     Pursuant to <u>Becerril-Lopez</u>, <u>Harris</u>, and <u>Tate</u>, the Court should find that petitioner's conviction under CPC section 211 remains a crime of violence after <u>Johnson</u>.   <u>United States v. Snead</u>, No. CR 12-0649 CW, 2016 WL 4091548, at *7 (N.D. Cal. Aug. 2, 2016) ("Because § 4B1.2's definition of crime of violence encompasses both generic robbery and generic extortion and because the Ninth Circuit has held that California Penal Code section 211 always constitutes either generic robbery or generic extortion, Movant's conviction under section 211 continues to qualify as a crime of violence following <u>Johnson</u>.").   This interpretation avoids creating a drastic, illogical disparity in weight between the same enumerated offenses included

30

1   within "crime of violence" under the Commentary to § 2L1.2 and those

2   included within "crime of violence" under the text and commentary to

3   § 4B1.2.  It would also comport with the Ninth Circuit's reading of

4   §§ 4B1.2(a)(2) and 4B1.2's Application Note 1 in Harris and Tate.

5       The current Sentencing Guidelines, which became effective

6   August 1, 2016, confirm this reasoning.  As part of a "multi-year

7   study of statutory and guidelines definitions" that focused on the

8   impact that prior convictions have on statutory and guidelines

9   provisions, the Sentencing Commission considered, "public comment,

10   and case law," and, notably, "the Supreme Court's recent decision in

11   Johnson."  (See Amendment: 'Crime of Violence' and Related Issues at

12   1, attached hereto as Ex. 1.)  Relying on Johnson, the Commission

13   struck the residual clause of § 4B1.2(a)(2), but moved robbery and

14   extortion from the Commentary to the text of the Guideline.  (Id. at

15   2, 3.)  The amendments represent the Commission's intent to revise

16   the list of enumerated offenses "to focus on the most dangerous

17   repeat offenders" and to foster "easier application" of the

18   Guideline.  (Id. at 2-3.)  By including robbery and extortion in the

19   text of the Guideline, the Commission signaled its intent to reaffirm

20   CPC section 211's place in the career offender analysis post-Johnson.

21   (Id. at 3.)

22               (A)  Under *Nieves-Medrano*, California Penal Code
                           section 211 Satisfies the "Elements" Clause

23                           of § 4B1.2

24       In addition to fitting within the "enumerated offenses" clause

25   discussed above, Ninth Circuit precedent shows that CPC section 211

26   also fits the "elements" test.  Although the Ninth Circuit recently

27   held that CPC section 211 cannot qualify as a "violent felony" under

28   the ACCA, United States v. Dixon, 805 F.3d 1193 (9th Cir. 2015), the

31

1    panel neither addressed - nor had authority to overrule - prior

2    holdings that the statute does qualify as a "crime of violence" under

3    18 U.S.C. § 16(a).   Those precedents control here because § 16(a)'s

4    elements clause is identical to the elements clause of the Career

5    Offender Guideline.   Compare U.S.S.G. § 4B1.2, with 18 U.S.C.

6    § 16(a).

7        In Nieves-Medrano v. Holder, 590 F.3d 1057, 1057-58 (9th Cir.

8    2010), the Ninth Circuit held that carjacking in violation of

9    California Penal Code section 215 is categorically a "crime of

10   violence" under 8 U.S.C. § 1101(a)(43)(F) (which, in turn, refers to

11   18 U.S.C. § 16).   The Circuit reasoned: (1) Becerril-Lopez, held that

12   California robbery is categorically a "crime of violence" under

13   U.S.S.G. § 2L1.2; (2) although the Sentencing Guidelines' definition

14   of "crime of violence" differed from the immigration statutes, which

15   use 18 U.S.C. § 16, those differences were irrelevant; and (3) that

16   "[t]he same elements that make § 211 a crime of violence are also

17   required in § 215," insofar as both include "the felonious taking of

18   property in the presence of another 'by means of force or fear.'"

19   Id. at 1057-58.

20       Although Nieves-Medrano involved carjacking rather than robbery,

21   its holding that carjacking is a crime of violence under 18 U.S.C.

22   § 16 necessarily rests on the Ninth Circuit's conclusion that

23   California robbery "has as an element the use, attempted use, or

24   threatened use of physical force against the person or property of

25   another."   See 18 U.S.C. § 16(a).   Indeed, the Ninth Circuit cited

26   Nieves-Medrano for the proposition that CPC section 211 is a "crime

27   of violence" under the elements clause.   See Serrano v. Holder, 440

28   Fed. Appx. 586, 587 (9th Cir. 2011) (unpublished) ("A conviction

                                    32

under Cal. Penal Code § 211 is categorically a crime of violence

under 18 U.S.C. § 16(a).").[24]

As a result, robbery under CPC section 211 is categorically an

"aggravated felony" under 18 U.S.C. § 16(a) and, in turn, the

elements clause of § 4B1.2(a) - the provision of the Career Offender

Guideline irrefutably unaffected by Johnson.  Although the government

recognizes that Dixon, 805 F.3d 1193, is in some tension with these

precedents, the three-judge panel in Dixon (1) did not mention either

Nieves-Medrano or David H. and (2) had no authority to overrule them.

Miller v. Gammie, 335 F.3d 889, 893 (9th Cir. 2003) (three-judge

panel is bound by prior panel opinions and can reexamine them only

when "the reasoning or theory of our prior circuit authority is

clearly irreconcilable with the reasoning or theory of intervening

higher authority").  Accordingly, pre-Dixon precedent - not Dixon

itself - controls here, and petitioner fails to establish that his

career offender enhancement resulted from application of the

"residual," rather than the "elements," clause under § 4B1.2.

---

[24] Similarly, in United States v. David H., 29 F.3d 489, 494 (9th Cir. 1994), the Ninth Circuit applied the categorical approach to hold that "a violation of California Penal Code § 211 includes the element of 'threatened use of physical force against the person of another.'"  The question in David H. was whether the defendant's prior robbery conviction triggered a mandatory transfer provision under the Federal Juvenile Delinquency Act, 18 U.S.C. § 5032.  That provision applies when, among other things, the defendant has a prior conviction for "a felony offense that has as an element thereof the use, attempted use, or threatened use of physical force against the person of another, or that, by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense."  29 F.3d at 493 (quoting 18 U.S.C. § 5032).  Applying the categorical analysis and relying on the "elements" clause, the Circuit held that "a violation of California Penal Code § 211 includes the element of 'threatened use of physical force against the person of another'" - that is, that it satisfies a standard that would also satisfy 18 U.S.C. § 16(a) and § 4B1.2(a)(1).  Compare id. at 494 with 18 U.S.C. § 16(a), U.S.S.G. § 4B1.2(a)(1).

1          2.    <u>Petitioner's motion also must be denied because armed</u>
2          <u>bank robbery remains a crime of violence</u>

3          Armed bank robbery, in violation of 18 U.S.C. § 2113(a), (d), is
4     the quintessential crime of violence and the crime Congress
5     specifically had in mind in enacting 18 U.S.C. § 924(c), which
6     provides heightened penalties for defendants who possess firearms in
7     furtherance of violent crimes.  Even so, petitioner contends that
8     after <u>Johnson II</u>, armed bank robbery no longer constitutes a crime of
9     violence because it (1) does not require <u>intentional</u> force or
10    threatened use of force and (2) does not require <u>violent</u> force.
11    Petitioner's argument defies common sense, is foreclosed by Ninth
12    Circuit precedent, and has been rejected by every court of appeals to
13    have considered the issue.  Petitioner's motion must be denied.

14              *a.*    Armed Bank Robbery Constitutes a Crime of
15                      Violence Under the Elements Clause

16         Under 18 U.S.C. § 924(c)(1)(A), "any person who, during and in
17    relation to any crime of violence . . . uses or carries a firearm, or
18    who, in furtherance of any such crime, possesses a firearm" is
19    subject to heightened mandatory minimum penalties.  "Crime of
20    violence" is defined as any felony (a) that "has as an element the
21    use, attempted use, or threatened use of physical force against the
22    person or property of another" (the "elements clause") or (b) "that
23    by its nature, involves a substantial risk that physical force
24    against the person or property of another may be used in the course
25    of committing the offense" (the "residual clause").  18 U.S.C.
26    § 924(c)(3)(A)-(B).  Even assuming that the residual clause is no
27    longer valid following <u>Johnson II</u>, armed bank robbery still qualifies

28

                                    34

1    as a crime of violence under the elements clause.  See Johnson II,

2    135 S. Ct. at 2557.[25]

3                        b.   The Lesser-Included Offense of Bank Robbery by
                             Force or Intimidation Is a Crime of Violence
4
5         Here, petitioner was convicted of armed bank robbery, in

6    violation of 18 U.S.C. § 2113(a), (d).  The Ninth Circuit has held

7    that the lesser-included offense of bank robbery by force or

8    intimidation, in violation of 18 U.S.C. § 2113(a), constitutes a

9    crime of violence under the elements clause.  Specifically, in United

10   States v. Selfa, 918 F.2d 749, 751-52 (9th Cir. 1990), the Ninth

11   Circuit held that § 2113 (a) was a crime of violence under the

12   elements clause of U.S.S.G. § 4B1.2(a)(1), which is nearly identical

13   to the elements clause at issue here.  Compare U.S.S.G. § 4B1.2(a)(1)

14   with 18 U.S.C. § 924(c)(3)(B).  The Ninth Circuit explained:

15        Selfa was twice convicted of violating that portion of 18
          U.S.C. § 2113 (a) which requires, at the very least, either
16        "force and violence" or "intimidation."  This court has
          defined "intimidation" under section 2113(a) to mean
17        "wilfully to take, or attempt to take, in such a way that
          would put an ordinary, reasonable person in fear of bodily
18        harm" . . . [This] definition [of intimidation] is
          sufficient to meet the section 4B1.2(1) requirement of a
19        "threatened use of physical force."

20   Selfa, 918 F.2d at 751 (citing United States v. Hopkins, 703 F.2d

21   1102, 1103 (9th Cir. 1983)).

22        While the defendant in Selfa was convicted of bank robbery, as

23   opposed to armed bank robbery, bank robbery is a lesser-included

24   offense of armed bank robbery.  United States v. Coleman, 208 F.3d

25   786, 793 (9th Cir. 2000) ("Armed bank robbery under 18 U.S.C.

26        [25] (contrasting residual clause with elements clause, noting that
     "unlike the part of the definition of a violent felony that asks
27   whether the crime 'has as an element the use . . . of physical
     force,' the residual clause asks whether the crime 'involves conduct'
28   that presents too much risk of physical injury")

                                   35

§ 2113(d) is an aggravated form of unarmed bank robbery, under § 2113(a)." (quoting United States v. Dinkane, 17 F.3d 1192, 1198 (9th Cir. 1994)).  Accordingly, the Ninth Circuit has held that armed bank robbery also constitutes a crime of violence under the elements clause.  United States v. Wright, 215 F.3d 1020, 2028 (9th Cir. 2000) ("Armed bank robbery qualifies as a crime of violence because one of the elements of the offense is a taking "by force and violence, or by intimidation." (quoting 18 U.S.C. § 2113(a)).

Notwithstanding this clear precedent, petitioner argues that armed bank robbery is not categorically a crime of violence because it requires neither intentional use of force nor violent force.  As petitioner acknowledges, the Court cannot disregard binding Ninth Circuit precedent unless "the reasoning or theory of [that] authority is clearly irreconcilable with the reasoning or theory of intervening higher authority."  Miller v. Gammie, 335 F.3d 869, 892-93 (9th Cir. 2003) (en banc).  None of the intervening cases cited by petitioner is irreconcilable with Selfa or Wright; indeed, Selfa and Wright were correctly decided.

Petitioner first contends that armed bank robbery no longer constitutes a crime of violence because it does not require the intentional use of physical force, relying on the Supreme Court's decision in Leocal, 543 U.S. at 9-10, and the Ninth Circuit's en banc decision in Fernandez-Ruiz v. Gonzales, 466 F.3d 1121, 1132 (9th Cir. 2006) (en banc).  In Leocal, the Supreme Court held that a Florida DUI offense was not a crime of violence under the elements clause because the "physical force" underlying that offense could be committed through "negligent or merely accidental conduct."  543 U.S. at 9-10.  Applying Leocal, the Ninth Circuit held in Fernandez-Ruiz

36

that an Arizona assault and domestic violence offense was not a categorical crime of violence because it could be committed through unintentional, reckless conduct, noting that "a wife and mother could be convicted of [the offense] by recklessly running a stop sign and causing a traffic accident that injured her passenger-husband and child."  466 F.3d at 1130.  In so holding, the Ninth Circuit observed that "neither recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a crime of violence under § 16."  <u>Id.</u>[26]

Leocal and <u>Fernandez-Ruiz</u> are not inconsistent with, let alone "clearly irreconcilable" with, <u>Selfa</u> and its progeny.  As <u>Selfa</u> makes clear, unlike the crimes at issue in <u>Leocal</u> and <u>Fernandez-Ruiz</u>, bank robbery by intimidation cannot be committed through mere negligence or recklessness; it requires a "willful" taking.  <u>Selfa</u>, 918 F.2d at 751 ("To take, or attempt to take, 'by intimidation' means wilfully to take, or attempt to take, in such a way that would put an ordinary, reasonable person in fear of bodily harm." (quoting <u>Hopkins</u>

---

[26] A recent Supreme Court decision casts serious doubt on the continued validity of <u>Fernandez-Ruiz</u>.  In <u>Voisine v. United States</u>, --- S. Ct. ---, No. 14-10154, 2016 WL 3461559, at *5 (June 27, 2016), the Supreme Court held that "a reckless domestic assault qualifies as a 'misdemeanor crime of domestic violence' under § 922(g)(9)."  In so holding, the Supreme Court reasoned -- contrary to the suggestion in <u>Fernandez-Ruiz</u> -- that one still actively engages in the "use of force" when acting recklessly, as opposed to knowingly or intentionally.  <u>Voisine</u>, 2016 WL 3461559, at *5 ("[T]he word 'use' . . . is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct.").  <u>Voisine</u> also rejects the suggestion that <u>Leocal</u> extends to reckless conduct, noting that <u>Leocal</u> interpreted 18 U.S.C. § 16 to exclude "'merely accidental' conduct."  <u>Voisine</u>, 2016 WL 3461559, at *6 ("[N]othing in <u>Leocal</u> . . . suggests . . . that 'use' marks a dividing line between reckless and knowing conduct.").

703 F.2d at 1103)); United States v. Alsop, 479 F.2d 65, 66 (9th Cir. 1973) ("[T]o take 'by intimidation' means wilfully to take by putting in fear of bodily harm."). Quite unlike the mother who recklessly runs a stop sign and thereby accidentally causes a collision, Fernandez-Ruiz, 466 F.3d at 1130, a defendant convicted of bank robbery must have intentionally (as opposed to accidentally) committed the acts constituting the intimidation. Fernandez-Ruiz, 466 F.3d at 1129 ("The term 'accidental' . . . is most often used to describe events that did not 'occur [ ] as a result of anyone's purposeful act." (internal quotation marks omitted)). Put another way, even if one could conjure up a scenario where a bank robber intentionally pointed a gun at a teller (or intentionally committed some other intimidating act) and yet did not specifically intend to intimidate anyone, because the intimidating act was intentional, the bank robber obviously did not "actively employ physical force against [the teller] by accident." Leocal, 543 U.S. at 9; see also Voisine, 2016 WL 3461559, at *6 (characterizing Leocal as only extending to "true accident[s]" such as "stumbling" or "dropping a plate).

     Petitioner's contention that bank robbery lacks the requisite intentionality because it is a general intent crime misunderstands general intent. As the Ninth Circuit has explained, the requisite "intentionality may be found in a general intent crime" to the extent that it requires an intentional act and knowledge of the facts that rendered the conduct criminal. See United States v. Melchor-Meceno, 620 F.3d 1180, 1184 (9th Cir. 2010). Bank robbery under § 2113(a) requires "proof of general intent -- that is, that the defendant possessed knowledge with respect to the actus reus of the crime (here, the taking of property of another by force and violence or

38

1    intimidation).'"  Carter v. United States, 530 U.S. 255, 268 (2000).

2    Thus, "the prosecution must show that the defendant knew 'the facts

3    that ma[de] his conduct fit the definition of the offense.'"  United

4    States v. McNeal, 818 F.3d 141, 155 (4th Cir. 2016) (quoting United

5    States v. Elonis, 135 S. Ct. at 2009 (2015)).  "[T]o secure a

6    conviction of bank robbery 'by intimidation, the government must

7    prove not only that the accused knowingly took property, but also

8    that he knew that his actions were objectively intimidating."  Id.

9    (emphasis added).  Accordingly, a person convicted of bank robbery

10   has necessarily acted with the requisite intent under Leocal and

11   Fernandez-Ruiz.

12        Petitioner next contends that armed bank robbery does not

13   constitute a crime of violence because it does not require violent

14   force.  This argument fares no better.  As an initial matter, neither

15   of the Supreme Court decisions petitioner references is "clearly

16   irreconcilable" with Selfa or Wright.  Petitioner cites Leocal, but

17   Leocal merely holds that the requirement of "physical force against

18   another person" suggests "a category of violent, active crimes that

19   cannot be said naturally to include DUI offenses."  Leocal, 543 U.S.

20   at 11.  In other words, "crimes of violence" do not encompass

21   "accidental or negligent conduct."  Id.  Nothing in Leocal suggests

22   that bank robbery -- perhaps the most natural example of a violent

23   crime -- is insufficiently violent for purposes of § 924(c).

24        Petitioner then cites Johnson v. United States, 559 U.S. 133

25   (2010) ("Johnson I").  However, Johnson I merely holds that a

26   conviction for simple battery under Florida law does not constitute a

27   violent felony under the ACCA, noting that "physical force" means

28   "violent force," and that battery under Florida law includes "any

1   intentional physical contact, no matter how slight."  559 U.S. at
2   136, 138, 140 (internal quotation marks omitted).  Johnson I has no
3   application here because a person cannot be convicted of bank robbery
4   for merely threatening to make "intentional physical contact, no
5   matter how slight," Johnson I, 559 U.S. at 138; the person must
6   "wilfully . . . take, or attempt to take, in such a way that would
7   put an ordinary, reasonable person in fear of bodily harm," Selfa,
8   918 F.2d at 751.  By requiring that the perpetrator willfully place
9   the victim in reasonable fear of bodily harm, bank robbery, unlike
10  simple battery, involves the requisite violent force contemplated by
11  Johnson I.

12      Petitioner further suggests that the threat of physical injury
13  inherent in any bank robbery is not sufficient because bodily injury
14  could be threatened or accomplished without the use of violent force,
15  citing "poisoning" as an example.  This argument fails at the
16  starting gate because petitioner has not demonstrated a "realistic
17  probability" that the federal government uses § 2113(a) to prosecute
18  conduct involving the use or threatened use of poison or other non-
19  violent force.  As the Supreme Court explained in Gonzales v. Duenas-
20  Alvarez, 549 U.S. 183, 193 (2007), "to find that a . . . statute
21  creates a crime outside the generic definition . . . requires more
22  than the application of legal imagination to a . . . statute's
23  language."  "It requires a realistic probability, not a theoretical
24  possibility, that the [government] would apply its statute to conduct
25  that falls outside the generic definition of a crime."  Id.  Here,
26  while petitioner conjures up a hypothetical bank robbery committed by
27  the threat of poison, he cites not a single case where such a bank
28  robbery was prosecuted.  McNeal, 818 F.3d at 156 (rejecting argument

40

1    that bank robbery was not a categorical crime of violence, noting

2    that the defendants "have not identified a single bank robbery

3    prosecution where the victim feared bodily harm from something other

4    than violent physical force").[27]   That petitioner cannot cite a single

5    case in support of his novel hypothetical is unsurprising: it is

6    difficult to fathom a bank robbery where a subtle or indirect use of

7    destructive force, removed in time and distance from the defendant,

8    could accomplish the taking of money from the bank.[28]   Because

9    petitioner's poison hypothetical is nothing more than "legal

10   imagination," Duenas-Alvarez, 549 U.S. at 193, petitioner cannot

11   establish that bank robbery fails the categorical test set forth in

12   Taylor v. United States, 495 U.S. 575, 600-02 (1990).[29]

13

14       [27] See also United States v. Burgos-Ortega, 777 F.3d 1047, 1054-
     55 (9th Cir.), cert. denied, 135 S. Ct. 2848 (2015) (rejecting
15   argument that state drug statute was categorically overbroad, noting
     that while "it is theoretically possible that a defendant could be
16   prosecuted for administering a controlled substance . . . the fact
     that [the defendant] has not identified such a case suggests that
17   there is no realistic probability of prosecution . . . for
     administering rather than delivering an illegal drug").
18       [28] It defies credulity to think that a bank teller would hand
     over money based on a threat of being poisoned at some point in the
19   non-immediate future; the police would arrive and arrest the robber
     long before the future threat could be realized.   Thus, contrary to
20   defendant's strained hypothetical, the harm a bank robber threatens
     must be that which he can directly and immediately inflict.   See
21   United States v. Santiesteban-Hernandez, 469 F.3d 376, 380 (5th Cir.
     2006) (holding that one of the defining elements of robbery is that
22   it occurs "under circumstances involving immediate danger to the
     person"), abrogated on other grounds by United States v. Rodriguez,
23   711 F.3d 541 (5th Cir. 2013).   Defendant's hypothetical is not only
     unprecedented, but unworkable.
24

25       [29] In addition to being unable to point to other cases where the
     bank robbery statute was applied to conduct involving a threat of
26   non-violent force, he cannot establish that "the statute was so
     applied in his own case" since he used a gun to commit his bank
27   robberies.   Duenas-Alvarez, 549 U.S. at 193 (requiring the defendant
     to "at least point to his own case or other cases in which the state
28                                                    *(footnote cont'd on next page)*

                                   41

1    Even if petitioner could demonstrate more than a theoretical
2  possibility of a bank robbery prosecution based on a threat to poison
3  the teller, his argument still fails as both the Ninth Circuit and
4  the Supreme Court have rejected it in similar contexts.  For example,
5  in Melchor-Meceno, 620 F.3d at 1185-86, the Ninth Circuit held that
6  felony menacing under Colorado law constituted a categorical crime of
7  violence and expressly rejected the defendant's argument that it did
8  not "require active violent force," even though a defendant could
9  commit the crime of menacing by putting someone in fear of injury by
10 use of smoke or poison.  See also id. ("One cannot knowingly place
11 another in fear of being poisoned without threatening to force poison
12 on the victim."); United States v. De La Fuente, 353 F.3d 766, 771
13 (9th Cir. 2003) ("[W]e have held that a criminal statute requiring
14 the creation and use of a fear of unlawful injury includes the
15 element of a threatened use of physical force." (alterations and
16 internal quotation marks omitted)).  Similarly, in United States v.
17 Castleman, 134 S. Ct. 1405, 1414 (2014), the Supreme Court rejected
18 the argument that poison did not involve "physical force," noting
19 that the "use of force" is "the act of employing poison knowingly as
20 a device to cause physical harm."

21     Ignoring these precedential cases, petitioner principally relies
22 on the Fourth Circuit's decision in United States v. Torres-Miguel,
23 701 F.3d 165, 168-69 (4th Cir. 2012) (holding that conviction for
24 making a criminal threat under California Penal Code § 422(a) is not
25 categorically a crime of violence).  For starters, Torres-Miguel

26 _____

27 courts in fact did apply the statute in the special (nongeneric)
28 manner for which he argues").

1    should carry little weight because its holding is directly at odds

2    with the Ninth Circuit's decision in United States v. Villavicencio-

3    Burruel, 608 F.3d 556, 563 (9th Cir. 2010) (holding that criminal

4    threat conviction under § 422 is categorical crime of violence).

5    Moreover, petitioner neglects to mention that, following Torres-

6    Miguel, the Fourth Circuit expressly rejected the argument (premised

7    on Torres-Miguel) that bank robbery was not a crime of violence.

8    McNeal, 818 F.3d at 156.   In McNeal, after explaining that

9    "intimidation entails a threat to use violent physical force, and not

10   merely a threat to cause bodily injury," the Fourth Circuit concluded

11   that "Torres-Miguel does not alter our conclusion that § 2113(a) bank

12   robbery is a crime of violence under the § 924(c)(3) [elements]

13   clause."   Id.[30]   In sum, in addition to the fact that Torres-Miguel is

14   an out-of-circuit case that obviously cannot overrule the Ninth

15   Circuit's decisions in Selfa or Wright, nothing in Torres-Miguel

16   undermines the conclusion that bank robbery is a categorical crime of

17   violence.

18           *c.*   Armed Bank Robbery Constitutes a Crime of
                    Violence Because the Use of a Deadly or Dangerous
19                  Weapon Necessarily Involves the Threatened Use of
                    Force

20

21        Armed bank robbery constitutes a crime of violence because the

22   lesser-included offense of bank robbery is a crime of violence.

23   Independently, regardless of whether bank robbery is a crime of

24   violence, armed bank robbery is a crime of violence because of the

      ─────────────────
25        [30] The Seventh Circuit has also rejected the rationale in Torres-
      Miguel, concluding that both poisoning and withholding medicine would
26    qualify as the use of force.   United States v. Waters, No. 15-2728,
      2016 WL 3003352, at *3 (7th Cir. May 24, 2016) (applying Castleman,
27    134 S. Ct. at 1415, to conclude that "employing poison knowingly as a
      device to cause physical harm" and "withholding medicine [to] cause[]
28    physical harm, albeit indirectly" qualify as "the use of force").

                                      43

added element that the defendant use a "dangerous weapon or device" to intentionally (1) assault another person or (2) make a display of force that reasonably caused a person to fear bodily harm.  See 9th Cir. Model Crim. Jury Instr. 8.162; see also United States v. Odom, 329 F.3d 1032, 1035 (9th Cir. 2003) (noting that "intentional display of a gun qualifies as 'use' under § 2113(d) and that "[t]he common denominator to the decisions affirming convictions under § 2113(d) is that the robber knowingly made one or more victims at the scene of the robbery aware that he had a gun, real or not"); Wright, 215 F.3d at 1028 (noting that armed bank robbery has the added element that "in committing the offense, the defendant assaulted any person, or put in danger the life of any person by the use of a dangerous weapon").[31]

Petitioner asserts -- without citation -- that "[i]t makes no difference . . . that a defendant in an armed bank robbery case uses a dangerous weapon in the course of committing the offense" because "whether he intentionally used the weapon is simply not an element of the crime." (Pet. 17-18.)  Petitioner is incorrect.  Under Ninth Circuit precedent, a defendant cannot be convicted of armed bank robbery if his use of a weapon was unintentional.  In Odom, the Ninth Circuit held that a "bank robber with a concealed gun who never mentions or insinuates having one, but who displays it inadvertently, [cannot] be convicted of armed bank robbery," noting that the robber must have "knowingly made one or more victims at the scene of the

---

[31] The use of a dangerous weapon is required for both the "assault" and "put in jeopardy" options of § 2113 (d).  Simpson v. United States, 435 U.S. 6, 13 n.6 (1978), superseded by statute on other grounds as stated in United States v. Beierle, 77 F.3d 1199, 1201 n.1 (9th Cir. 1996).

robbery aware that he had a gun." 329 F.3d at 1033, 1035. The

intentional act of assaulting someone with a dangerous weapon <u>or</u>

using a dangerous weapon in a way that causes a person to fear bodily

harm necessarily requires "the use, attempted use, or threatened use

of physical force against the person." 18 U.S.C. § 924(c)(3)(A).

Petitioner contends that armed bank robbery lacks the requisite

violent force, noting that a defendant may be found guilty if he

displays or references a gun without threatening to use the gun or if

he uses an inoperable or unloaded gun. Petitioner's argument is

meritless because all of his examples still involve the "threatened

use of physical force." 18 U.S.C. § 924(c)(3)(A).[32]

> > *d.* Court of Appeals Have Reaffirmed that Armed Bank
> > Robbery Constitutes a Crime of Violence
> > Notwithstanding *Johnson II*

Petitioner's position that armed bank robbery is not a crime of

violence has never been accepted by any court. A host of court of

appeals decisions have rejected his argument. Since *Johnson II* was

---

[32] A person who demands money from a bank teller while holding a
gun or referencing the fact that he has a gun is obviously making a
threat of physical force against the teller. Moreover, the act of
displaying a gun or other dangerous weapon during a robbery is no
less threatening just because it turns out that the weapon is
inoperable or unloaded. Notably, in <u>Melchor-Meceno</u>, 620 F.3d at
1186, the defendant made a similar argument to that being advanced
here, contending that his menacing crime was not a crime of violence
because the crime could be committed by "holding a weapon to the side
rather than pointing it at a person." The Ninth Circuit summarily
dismissed the argument: "Holding a weapon to one's side constitutes a
threat of physical force, and a threat of physical force is
sufficient to constitute a crime of violence." <u>Id.</u>; <u>see also</u> <u>Bolanos
v. Holder</u>, 734 F.3d 875, 877 (9th Cir. 2013) (holding that
brandishing a firearm in the presence of the occupant of a motor
vehicle, in violation of California Penal Code Section 417.3, was a
categorical crime of violence because it had, as an element, the
threatened use of physical force). Because intentionally using a
dangerous weapon in a way that causes a person to fear bodily harm
necessarily requires, at a minimum, the "threatened use of physical
force," armed bank robbery is a crime of violence under the elements
clause.

45

decided, the Ninth Circuit has twice reaffirmed (in unpublished decisions) that bank robbery by force or intimidation constitutes a crime of violence.  United States v. Howard, --- Fed. Appx. ---, No. 15-10042, 2016 WL 3470070, at *1 (9th Cir. June 24, 2016); United States v. Steppes, --- Fed. Appx. ---, No. 15-10243, 2016 WL 3212168, at *1 (9th Cir. June 10, 2016).[33]

Consistent with Howard and Steppes, every other court of appeals to have considered the issue has concluded that armed bank robbery or the lesser-included offense of bank robbery by force or intimidation constitutes a crime of violence after Johnson II.[34]  The Court should

---

[33] In Howard, the Ninth Circuit rejected the defendant's argument that Hobbs Act robbery did not constitute a crime of violence, noting that "the analogous federal bank robbery statute, which may be violated by 'force and violence, or by intimidation,' 18 U.S.C. § 2113(a), qualifies as a crime of violence under U.S.S.G. § 4B1.2." 2016 WL 3470070, at *1.  In so holding, the Ninth Circuit reaffirmed that "'intimidation' means willfully 'to take, or attempt to take, in such a way that would put an ordinary, reasonable person in fear of bodily harm,' which satisfies the requirement of a 'threatened use of physical force.'"  Id. (quoting Hopkins, 703 F.2d at 1103).  Similarly, in Steppes, the Ninth Circuit rejected the defendant's career offender challenge, citing Selfa, 918 F.2d at 751-52, for the proposition that bank robbery was a crime of violence.  2016 WL 3212168, at *1.  In so holding, the Ninth Circuit rejected the identical arguments advanced in petitioner's motion,[33] observing that "[n]one of the cases cited by Steppes is 'clearly irreconcilable' with our prior opinions holding these crimes categorically to be crimes of violence."  Id. (quoting Miller, 335 F.3d at 900).

[34] United States v. McBride, --- F.3d ---, No. 15-3759, 2016 WL 3209496, at *2 (6th Cir. June 10, 2016) (holding that bank robbery is a crime of violence under the force clause because "taking by intimidation under § 2113(a) . . . involves the threat to use physical force"); In re Hines, --- F.3d ---, No. 16-12454-F, 2016 WL 3189822, at *3 (11th Cir. June 8, 2016) (holding that the "statutory elements" of 18 U.S.C. § 2113(a), (d) "clearly meet § 924(c)(3)(A)'s requirement that the underlying felony offense must have 'as an element the use, attempted use, or threatened use of physical force against the person or property of another'"); United States v. McNeal, 818 F.3d 141, 152 (4th Cir. 2016) (reaffirming prior precedent that "armed bank robbery is unquestionably a crime of

(footnote cont'd on next page)

hold, consistent with Ninth Circuit authority and uniform circuit-level authority, that petitioner's armed robbery offense constitutes a crime of violence.

> e. Defendant's Conviction for Armed Bank Robbery Also Constitutes a Crime of Violence as an Enumerated Offense

Petitioner's conviction for Armed Bank Robbery qualifies as a crime of violence as generic robbery under the enumerated offense prong of the commentary to USSG § 4B1.2.

To prove unarmed bank robbery, the government must show: (1) the defendant took money belonging to a bank, credit union, or savings and loan, (2) by using force and violence or intimidation and (3) the deposits of the institution were insured by the FDIC. See 18 U.S.C. § 2113(a). Armed bank robbery contains the following additional element: (4) in committing the offense, the defendant assaulted any person, or put in danger the life of any person by the use of a dangerous weapon. See 18 U.S.C. § 2113(d). In comparison, the generic definition of robbery in the Ninth Circuit is as follows: "[A]ggravated larceny, containing at least the elements of violence, because it 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another'" (quoting United States v. Adkins, 937 F.2d 947, 950 n.2 (4th Cir. 1991)).

Moreover, because Johnson II only implicates the residual clause, 135 S. Ct. at 2557-60, it does not cast doubt on earlier circuit authority holding that bank robbery is a crime of violence under the elements clause. E.g., United States v. Wright, 957 F.2d 520, 521-22 (8th Cir. 1992) (holding that bank robbery under § 2113(a) is a crime of violence because the use or threatened use of force is an element of the offense); United States v. Jones, 932 F.2d 624, 625 (7th Cir. 1991) (holding that bank robbery under § 2113(a) is "per se" a crime of violence because "[i]ntimidation means the threat of force" and therefore "threatened use of force is an element of every bank robbery").

47

misappropriation of property under circumstances involving immediate danger to the person."  United States v. Becerril-Lopez, 541 F.3d 881, 891 (9th Cir. 2008).  Juxtaposed against each other, the plain language of the generic definition is mirrored by elements of § 2113(a) – the taking of property, specifically, money, by using "force and violence or intimidation," roughly corresponding to misappropriation of property in a situation involving immediate danger to another individual.

While there are no published circuit court decisions analyzing § 2113 under the enumerated offense prong – likely in part because it has repeatedly been found to qualify under the elements clause and courts thus rarely reached the enumerated offense prong – the Eleventh Circuit's decision in United States v. Shuck, 481 Fed. Appx. 600 (11th Cir. 2012), is instructive.  There, the court considered whether bank robbery by intimidation, in violation of § 2113(a), qualified as a crime of violence under the enumerated offense prong. Id. at 603.  It concluded that bank robbery did so qualify, in part because bank robbery was a "natural equivalent of generic robbery." Id.  Similarly, another panel of the Eleventh Circuit more recently affirmed this holding, reasoning that "[t]he elements of a § 2113(a) offense are nearly identical to the elements of generic robbery," and thus, "bank robbery, or attempted bank robbery, under § 2113(a), even when perpetrated by means of intimidation, is an enumerated offense that qualifies as a crime of violence under § 4B1.2(a)." The fact that the statute at issue here is federal, only further buttresses the argument that § 2113 is likely to match the federal generic definition of robbery.  Courts frequently look to a comparable federal statute when ascertaining the federal generic

48

definition of an enumerated offense.   While the Becerril-Lopez Court did not explicitly draw from § 2113, perhaps because it pertains to a specific subspecies of robbery, in fashioning a generic definition of robbery, it seems incongruous to posit that a corresponding federal statute would not, at a minimum, bear relevance in determining the generic definition of an enumerated offense.

> *f.*   Petitioner's Position Defeats the Purpose of the § 924(c) Statute in Regards to Armed Bank Robbery

Petitioner's position would defeat the purpose of the § 924(c) statute.   Because a court "cannot interpret federal statutes to negate their own stated purposes," King v. Burwell, 135 S. Ct. 2480, 2493 (2015), petitioner's argument must be rejected.

During the development of § 924(c), armed bank robbery was repeatedly cited as the paradigmatic crime of violence addressed by the statute.   The original enactment of § 924(c) in 1968 applied to use of a firearm to commit "any felony."   The statute was amended in 1984 to refer instead to a "crime of violence."   See Bailey v. United States, 516 U.S. 137, 147-48 (1995) (citing the Comprehensive Crime Control Act of 1984, Pub. L. 98-473, § 1005(a), 98 Stat. 2138-39). At the time, the Senate committee report, which recommended this and other amendments to the statute, stated:

> [F]or example, a person convicted of armed bank robbery in violation of section 2113(a) and (d) and of using a gun in its commission (for example by pointing it at a teller or otherwise displaying it whether or not it is fired) would have to serve five years (assuming it was his first conviction under the subsection) less only good time credit for proper behavior in prison, before his sentence for the conviction under section 2113(a) and (d) could start to run.

49

1   S. Rep. 98-225, 98th Cong., 1st sess., 1984 U.S.C.C.A.N. 3182,

2   3492 (Aug. 4, 1983).[35]

3       That Congress envisioned armed bank robbery as a predicate crime

4   of violence finds additional support in the express language of

5   § 924(c)(1)(A), which provides that the term "crime of violence"

6   includes "a crime of violence . . . that provides for an enhanced

7   punishment if committed <u>by the use of a deadly or dangerous weapon or</u>

8   <u>device</u>." 18 U.S.C. § 924(c)(1)(A) (emphasis added).  It is no

9   coincidence that this language mirrors the language in the armed bank

10  robbery statute, which defines a heightened offense when, in the

11  course of bank robbery, the culprit "assaults any person, or puts in

12  jeopardy the life of any person <u>by the use of a dangerous weapon or</u>

13  <u>device</u>." 18 U.S.C. § 2113(d) (emphasis added).[36]

14      A statute may not be interpreted to produce an absurd result.

15  <u>See, e.g.</u>, <u>Castleman</u>, 134 S. Ct. at 1413; <u>United States v. Hayes</u>, 555

16

17  _____

18      [35] The report further explained that one of the specific purposes
    of the amendment was to abrogate <u>Simpson</u>, 435 U.S. at 16, which held
19  that Congress did not intend to authorize application of both the
    enhancement in § 2113(d) for armed bank robbery and the consecutive
20  five-year penalty under § 924(c) in the case of a bank robbery
    committed with a firearm.  The report explained that, as amended,
21  § 924(c) would require "a mandatory, determinate sentence for a
    person who uses or carries a firearm during and in relation to any
22  federal 'crime of violence,' including offenses such as bank robbery
    . . . which provide for their own enhanced punishment if committed by
23  means of a dangerous weapon." 1984 U.S.C.C.A.N. at 3491.  Thus, one
    key purpose of amending the statute was to ensure that armed bank
24  robbery would qualify as a predicate crime of violence.  <u>United</u>
    <u>States v. Blocker</u>, 802 F.2d 1102, 1105 (9th Cir. 1986) (concluding,
25  based on legislative history, that "§ 924(c), as amended,
    contemplates cumulative punishment of those convicted of armed bank
26  robbery (§ 2113(d)) and possession of a firearm during commission of
    a crime of violence (§ 924(c))").
27      [36] Armed bank robbery is regularly charged as a predicate "crime
    of violence" in connection with § 924(c).  <u>See, e.g.</u>, <u>Corley v.</u>
28  <u>United States</u>, 556 U.S. 303, 311 (2009).

                                    50

1  U.S. 415, 427 (2009).[37]  Here, adopting petitioner's position that

2  armed bank robbery is not a crime of violence would directly defeat

3  Congress's purpose in enacting the statute.  See S. Rep. 98-225, 312,

4  1984 U.S.C.C.A.N. 3182, 3490 (describing armed bank robbery as

5  "precisely the type of extremely dangerous offense[] for which a

6  mandatory punishment for the use of a firearm is the most

7  appropriate").  It would also defy the commonsense notion that armed

8  bank robbery is a violent crime.  Accordingly, the Court should

9  conclude that armed bank robbery is a crime of violence and deny

10  petitioner's motion.

11  **IV.  CONCLUSION**

12      The government requests that this Court dismiss or deny

13  petitioner's motion to vacate, set aside, or correct his sentence.

14  Dated: September 20, 2016        Respectfully submitted,

15                                   _____
                                            /s/
16                                   J. MARK CHILDS
                                     Assistant United States Attorney

17                                   Attorneys for Respondent
                                     UNITED STATES OF AMERICA

18

19

20

21

22

23

24

25

26

27      [37] See also Voisine, 2016 WL 3461559, at *5 (concluding that
    § 922(g)(9) extends to reckless domestic violence assaults, noting
    that a contrary conclusion "would substantially undermine the
28  provision's design").

                                     51